Gould *v.* Town of Venice.

## GOULD *vs.* THE TOWN OF VENICE.

### STARIN *vs.* THE TOWN OF GENOA.

The constitutionality of the act of April 16, 1852, " to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a rail road or rail roads from Lake Ontario to the New York and Erie, or Cayuga and Susquehanna rail road," must be deemed settled by the recent decisions.

Authority being given to the towns, by the statute, to issue bonds, instruments appearing on their face to have been executed in pursuance of that authority, and so far as appears, in accordance with it, are valid in the hands of, and may be enforced by, *bona fide* holders thereof; whether the prerequisites prescribed by the statute to the issuing of the bonds, beyond the organization of a rail road company, &c., and the filing in the county clerk's office of the assent of resident tax-payers, with the affidavit attached, as specified in the statute, were complied with or not.

Instruments without seal, issued by a town, which contain an acknowledgment that, in pursuance of the statute, and for the purpose of aiding in the

Gould v. Town of Venice.

construction of the rail road therein specified, the town owes, and a promise by the town to pay to — — —, or bearer, $1000, with interest at the rate of seven per cent, payable as therein mentioned, are negotiable; although the statute does not prescribe the form of the bonds, nor expressly provide whether they shall or shall not be negotiable.

The omission of a seal is not a fatal objection to instruments thus executed by a town, as being instruments not warranted by the law.

Although the statute specifies a " bond or bonds" as the instruments which it shall be lawful for the towns to execute, this is to be deemed as done with a view to the interests of the creditors only; and if they are willing to waive the proposed benefit and accept unsealed obligations, the towns cannot object that such obligations were not authorized.

APPEALS from orders made at a special term, ordering judgment for the defendant on demurrer to the complaint in each of the above actions. The complaint in the first suit alleged, that by an act of the legislature of the state of New York, entitled "an act to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a rail road, or rail roads, from Lake Ontario to the New York and Erie, or Cayuga and Susquehanna rail road," passed April 16th, 1852, it was, among other things, made lawful for the supervisor and rail road commissioners of the town of Venice, in the county of Cayuga, to borrow, on the faith and credit of said town, such a sum of money as they might deem necessary, not to exceed $25,000, for a term of time not exceeding twenty years, with such rate of interest as might be agreed upon, not exceeding seven per cent per annum, and to execute therefor, under their official signatures, a bond or bonds, on which the interest should be made payable annually, or semi-annually, during the term said money might be borrowed; and the principal and interest of which loan should be made payable in such sums, and at such times and place as should be agreed upon, and expressed in the bonds duly executed under the authority of said act. That all moneys borrowed under the authority of said act, should be paid over to the president and directors of such rail road company, then organized, or such company as might be organ-

ized, according to the provisions of the general rail road law, passed April 2d, 1850, as might be expressed by the written assent of two thirds of the resident tax-payers of said town, to be expended by such president and directors in grading, constructing and maintaining a rail road, or rail roads, passing through the city of Auburn, and connecting Lake Ontario with the Susquehanna and Cayuga rail road, or the New York and Erie rail road ; provided that the said supervisor and commissioners should have no power to do any of the acts authorized by said act, until a rail road company had been duly organized, according to the requirements of the general rail road law, for the purpose of constructing the aforesaid described rail road, and the written assent of two thirds of the resident persons taxed in said town, as appearing on the assessment roll of such town, made next previous to the time such money might be borrowed, should have been obtained by such supervisor and commissioners, or some one or more of them, and filed in the clerk's office of Cayuga county, together with the affidavit of such supervisor and commissioners, or any two of them attached to such a statement, to the effect that the persons whose written assent were thereto attached, and filed as aforesaid, comprised two thirds of all the resident tax-payers of said town, on its assessment roll, next previous thereto ; and in and by which said act it was further provided, that the said supervisor and commissioners, on obtaining and filing such assent as aforesaid, might subscribe for and take, in the name of and for such town, such a number of shares of the capital stock of such company as should or might be organized for the purpose of constructing the aforesaid described rail road, or rail roads, as would be equal to the amount of the bonds executed under the authority of said act. The complaint further alleged, that afterwards, to wit, on or about the 23d day of August, 1852, a rail road company was duly organized, according to the provisions of the general rail road law of the state of New York, passed April 2d, 1850, by the name of " The Lake Ontario, Auburn and New York Rail

Road Company," for the purpose of constructing and main-
taining a rail road, passing through the city of Auburn, and
connecting Lake Ontario with the Cayuga and Susquehanna
rail road ; and which said company, immediately upon its or-
ganization as aforesaid, proceeded to the construction of such
rail road, and was engaged in such construction at the time
of the execution and issuing by the supervisor and rail road
commissioners of said town of Venice, as hereinafter men-
tioned, of the bonds hereinafter mentioned.    That by virtue
of the power conferred by said act upon the supervisor and
rail road commissioners of said town, afterwards, to wit,
on or about the 2d day of March, 1853, Calvin King, who
was then the supervisor of said town of Venice, duly elected
and qualified, and acting as such, and Jonas Wood and Isaac
Smith, who were then the rail road commissioners of said
town, duly elected, qualified and acting as such, pursuant to
the provision of said act of the legislature, passed April 16th,
1852, duly made and executed, under their official signatures,
twenty-five bonds of said town of Venice, each of which said
bonds was an exact duplicate or counterpart of every other,
except that each was differently numbered from every other,
the numbers thereof being from one to twenty-five, both in-
clusive, and each of which bonds was executed by the said
supervisor and rail road commissioners, under their official
signatures, and in and by each of which said bonds the said
town of Venice, pursuant to said act of the legislature, for the
purpose of aiding the construction of the said " The Lake
Ontario, Auburn and New York rail road," promised to pay to
----, or bearer, the sum of $1000, with interest, at the rate
of seven per cent, payable semi-annually, on the 1st days of
January and July in each year, on surrender of the coupons
thereto attached, at the Bank of the State of New York, in
the city of New York, the principal to be reimbursable at the
same place, at the expiration of twenty years from the 1st
day of January, 1853, and to each of which said bonds were
attached coupons, for the respective installments of interest,

Gould *v.* Town of Venice.

as the same should become due·and payable, according to the terms of said bond ; one of which said bonds being annexed to the complaint, marked "schedule A." That after the execution of said bonds, and on or about the 15th day of August, 1853, the said Calvin King, as such supervisor, and the said Jonas Wood and Isaac Smith, as such rail road commissioners, (the said Calvin King then being and acting as such supervisor, and the said Jonas Wood and Isaac Smith then being and acting as such commissioners,) under and in accordance with said act of the legislature, and by virtue of the authority thereby conferred, subscribed for and took, in the name of and for said town of Venice, 500 shares of the capital stock of said company, of the par value of $50 each share, making the aggregate par value thereof equal to the amount of the bonds theretofore executed under the authority of said act. That afterwards, and on or about the 10th day of October, 1853, the said Calvin King, as such supervisor, and the said Jonas Wood and Isaac Smith, as such commissioners, having as aforesaid subscribed for and taken such stock of said company to the amount of 500 shares, of the par value of $50 each, and having in their possession the said twenty-five bonds so executed as aforesaid, they, the then supervisor and commissioners of said town, sold, assigned, transferred and set over said bonds, and all of them, to the said "The Lake Ontario, Auburn and New York Rail Road Company," in payment of the amount of such subscriptions as aforesaid, and the said "The Lake Ontario, Auburn and New York Rail Road Company," in consideration thereof, issued and delivered to the said supervisor and commissioners of said town 500 shares of full stock of the capital stock of said company, of the par value of $50 each share, in the name of and for said town of Venice, and took and received said bonds in full payment therefor ; and the said town of Venice actually received, and ever after owned and held, and still owns and holds the said stock, which was paid for by said town, wholly, by the delivery of said bonds in payment as aforesaid, and

not otherwise. That previous to the execution and delivery of said bonds as aforesaid, or of any of them, the written assent of two thirds of the resident persons taxed in said town, as appearing on the assessment roll of said town next previous to the time of the sale of said bonds, was obtained by the said supervisor and commissioners of said town, and filed in the clerk's office of Cayuga county, (such assent expressing the Lake Ontario, Auburn and New York Rail Road Company as the company to which all moneys borrowed under said act should be paid,) together with the affidavit of the said supervisor and commissioners attached to the statement of such assent, to the effect that 'the persons whose written assent was thereto attached and filed as aforesaid, composed two thirds of all the resident tax-payers of said town, on its assessment roll, next previous thereto, as required by the provisions of said act; and duplicate copies of said bonds were also, at or about the time of the transfer of said bonds as aforesaid, duly filed by the said supervisor in the said clerk's office of Cayuga county. And the plaintiff further alleged that he had become, and now was, the *bona fide* holder and owner, by the purchase thereof, for a valuable consideration, of eleven of said bonds, being Nos. 8, 9, 10, 11, 12, 13, 14, 22 and 23, with the interest coupons, for the installments of interest remaining unpaid thereon, and that he was entitled to demand, have and receive the interest moneys now due and owing and remaining unpaid thereon; and that the interest on each of said bonds, from the 1st day of July, 1855, remains wholly due and unpaid, being the respective semi-annual installments which became due on the 1st days of January and July, in each of the years 1856, 1857 and 1858, and amounting upon each of said bonds to the sum of $210. And the plaintiff further alleged that the payment of each of said installments, upon each of said bonds, had been duly demanded, on behalf of him, the said plaintiff, as the holder and owner of said bonds, as the same respectively became due and payable, and the respective coupons therefor offered to be surrendered; but the same had not, nor

had any part thereof been paid, but payment thereof had at all times been refused. And that the defendant had entirely neglected to provide money at the Bank of the State of New York, in the city of New York, for the purpose of paying the installments of interest upon said bonds, or any of them, as the same or any of them became due and payable, and that no moneys had at any time been provided at said bank for that purpose. Wherefore, the plaintiff demanded judgment against the defendant for the sum of $2310, with interest on the sum of $385 from the 1st day of January, 1856, and on the further sum of $385 from the 1st day of July, 1856, and on the further sum of $385 from the 1st day of January, 1857, and on the further sum of $385 from the 1st day of July, 1857, and on the further sum of $385 from the 1st day of January, 1858, and on the further sum of $385 from the 1st day of July, 1858, with the costs and disbursements of this action.

"Schedule A," annexed to the complaint, contained the following copy of one of the bonds :

"State of New York.

No. 8.         County of Cayuga.         $1000.

Seven per cent loan, not exceeding $25,000. Be it known, that the town of Venice, in the county of Cayuga and state of New York, in pursuance of an act of the legislature of the said state, entitled an act to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a rail road, or rail roads, from Lake Ontario to the New York and Erie, or Cayuga and Susquehanna rail road, passed April 16, 1852, and for the purpose of aiding the construction of the Lake Ontario, Auburn and New York rail road, owes, and promises to pay, to _____ or bearer, one thousand dollars with interest, at the rate of seven per cent, payable semi-annually, on the first days of January and July, in each year, on surrender of the coupons hereto attached, at the Bank of the State of New York, in the city of New York, the principal

Gould *v.* Town of Venice.

to be reimbursable at the same place, at the expiration of twenty years from the first day of January, 1853.

In testimony whereof, the supervisor and commissioners of the town of Venice have, pursuant to the provisions of the act aforesaid, and the written assent of two-thirds of the resident tax-payers of said town, obtained and filed in the office of the clerk of the county of Cayuga, hereunto subscribed their names, this 26th day of February, A. D. 1853.

(Signed) CALVIN KING, Supervisor.

JONAS WOOD, ⎱
ISAAC SMITH, ⎰ Commissioners.

*Cayuga County Clerk's Office, ss.*

I, Edwin B. Marvin, clerk of the county of Cayuga, hereby certify that a paper purporting to be the written assent of two thirds of the resident tax-payers of the town of Venice, with the affidavit required by section one of the act referred to by its title in the foregoing bond, has been filed in this office.

Dated Auburn, May 16, 1853.

(Signed) E. B. MARVIN, Clerk of Cayuga county."

To this complaint the defendant demurred, and assigned the following causes of demurrer:

" That said complaint does not state facts sufficient to constitute a cause of action herein against the said defendant. That the act mentioned and referred to in said complaint, was and is unconstitutional and void. That said complaint does not show that any money was ever borrowed, under and in pursuance of said act. That if borrowed, it was not borrowed at the time or in the manner required by said act. That said complaint does not show or state that the supervisor or assessors, or any other officer of said town, ever met to agree, resolve, move or determine, to borrow any money for the purposes contemplated by said act, or to ' deem' or adjudge that $25,000, or any other sum of money, was necessary for the purposes and objects contemplated by said act. That said complaint does not show that any bonds were ever issued in pursuance of said act, or otherwise, or according to the provisions and

requirements of said acts, and that the instruments mentioned and referred to in said complaint and therein denominated bonds, are void and of no effect upon their face. That it is not stated or averred in said complaint, that the assent mentioned and referred to in said' complaint, was ever obtained or filed by any supervisor, assessor or other officer of said town of Venice. Nor does it appear that said assent was the written assent of two thirds of the resident persons taxed in said town, as appeared on the assessment roll of said town, next previous to the time said money was borrowed; but on the contrary thereof, it appears that it was not such an assent of the taxpayers of said town as required by said act. That it does not appear by said complaint, that the subscription so made by the supervisor and assessors of said town, to the capital stock of said rail road company, in said complaint mentioned, was a valid or legal subscription, or binding upon said town in any way whatsoever."

The pleadings in the second suit were similar to those in the first.

The court, at special term, ordered judgment for the defendant, in each action, with leave to the plaintiff to amend his complaint within twenty days. The defendants severally appealed.

*Wright & Pomeroy,* for the plaintiff.

*C. A. Warden,* for the defendant.

*By the Court,* T. R. STRONG, J. The constitutionality of the statute under which the instruments in question, called bonds, were issued, must be deemed settled by recent decisions. (*The Bank of Rome* v. *The Village of Rome,* 18 *N. Y. R.* 38. *Clarke* v. *The City of Rochester,* 24 *Barb.* 446. *Benson* v. *Mayor &c. of Albany, Id.* 248. *Grant* v. *Courter, Id.* 232.)

The plaintiffs are bona fide purchasers of the so called bonds, for a valuable consideration, and if the statute authorized instruments of such a nature, and they are negotiable, like bills

of exchange and other commercial paper, there can be no doubt that the plaintiffs are entitled to prevail in these actions. Authority being given to the towns by the statute to issue bonds, and the instruments appearing on their face to have been executed in pursuance of that authority, and so far as appears in accordance with it—whether the prerequisites prescribed by the statute to the issuing of the bonds, beyond the organization of a rail road company, &c., and the filing in the county clerk's office of the assent of resident tax-payers, with the affidavit attached as specified in the statute, were complied with or not—the bonds are valid in the hands of and may be enforced by the plaintiffs as bona fide holders. This doctrine is fully sustained by the case of *The Farmers' and Mechanics' Bank of Kent County* v. *The Butchers' and Drover's Bank,* (16 *N. Y. R.* 125,) and the cases therein cited.

The utmost that purchasers of the bonds were required to ascertain was, that such a rail road company had been organized, and the assent and affidavit provided for by the statute filed; that there was apparent authority to execute the bonds; and those things only were necessary to such apparent authority. Full compliance with those conditions to the existence of the power, before the making of the bonds, appears by the complaint.

The bonds express an acknowledgment that in pursuance of the statute, and for the purpose of aiding in the construction of the rail road specified in the bonds, the towns owe, and a promise by them to pay, to ____ or bearer $1000, with interest at the rate of seven per cent, payable as therein mentioned. They are without seal, and are in terms negotiable; and they contain every requisite to negotiability in the case of an ordinary instrument for the payment of money. They are a written promise by one to another for the payment of money absolutely. The statute does not prescribe the form of the bonds, nor expressly provide whether they may or shall not be negotiable; but I think there is in its language the purpose for which the bonds were to be used, and the general

understanding and practice of the community in regard to similar securities, evidence that the legislature contemplated, in respect to them, the element of negotiability. In the 5th section of the statute, provision is made for the payment of dividends on stock to the "holders of the aforesaid bonds;" and in the 7th section direction is given in regard to the disposition of the proceeds of a sale of shares of stock, if the "owner or owners of said bonds" will not accept the same. This language implies transferability, and is especially appropriate in reference to negotiable paper. Again, the bonds were to be used for borrowing money, several bonds were to be issued to several individuals, and, in the usual course of business, negotiable securities would be required by lenders. Further, the bonds belong to a class of securities which have been generally understood to be, and have been treated as negotiable. They are, in popular language, rail road bonds, of which a vast number, of immense aggregate amount, have, within the last twenty years, been issued both in this country and abroad, and which have been in daily circulation from one to another by mere delivery. Aside from the authority of adjudged cases, I should not doubt the negotiability of the bonds in question; but the decisions are conclusive on the subject. In the *Bank of Rome* v. *The Village of Rome*, a case in the court of appeals of this state, decided in March last, bonds of the village corporation, although under the corporate seal, issued under the authority of a statute for the payment for stock in a rail road, were held to be negotiable, although the statute is silent on the subject. Comstock, J., says, "The bonds were payable to bearer, and, although under the corporate seal of the village, they were negotiable instruments in such a sense as would except them, in the hands of a bona fide holder, from a defense which might be available against the rail road company." (*State of Illinois* v. *Delafield*, 8 *Paige*, 527. *Same case on appeal*, 2 *Hill*, 159, 177. *Mechanics' Bank* v. *New Haven R. R. Co.*, 3 *Kern.* 625, 627. *Fisher* v. *Morris Canal Co.*, 3 *Am. Law Reg.* 423. *See also Gor-*

*gier* v. *Mieville,* 3 *Barn. & Cress.* 45; 10 *Eng. Com. Law,* 16; 2 *Parsons on Con.* 240.)

The question remains, whether the bonds are in conformity to the act in respect to the securities authorized. The statute specifies " a bond or bonds " as the instruments which it shall be lawful for the towns to execute. In strictness, the term bond imports a sealed obligation ; and the securities in question are not bonds, for the want of a seal. But it is not probable that the legislature used the word, in this statute, in that confined sense, or as signifying more than an instrument substantially in the form of a bond, without regard to a seal. The principal object in view in regard to· the security was, that it should be a promise by the town to pay, which would be acceptable to the lenders. It is not perceived that a seal would be of any benefit to the towns ; it would benefit only the lenders. A technical bond would be a higher security than an unsealed promise to pay, and more valuable, in some respects, to a creditor, and to the same extent less desirable to a debtor. Specifying bonds instead of notes, must therefore have been with a view to the interests of the creditors only ; and if they were willing to waive the proposed benefit and accept unsealed obligations, it does not seem to be just that the towns should be permitted to object that those obligations were not authorized. This view of the intention of the legislature in the use of the term bond is confirmed by the well known fact, of which we may take notice as part of the history of the state, that towns do not ordinarily have occasion for or possess a corporate seal, their corporate capacity being very limited. Construing the statute according to its spirit, its obvious substantial meaning, I cannot believe that the omission of a seal is a fatal objection to the bonds, as being instruments not warranted by the law.

I think, therefore, that the so called bonds are valid securities against the towns, in the hands of the plaintiffs as bona fide holders, and for that reason that the judgments at special

term should be reversed, and judgments ordered for the plaintiffs on the demurrers, with leave to the defendants to answer on payment of costs.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong, E. Darwin Smith* and *Johnson,* Justices.]