By the Court, Barbour, J.
This case comes here under the direction of the judge, before whom, with a jury, the cause was tried, that the exceptions taken at the trial be heard at general term in the first instance. The most important of those exceptions was one which was taken to the instruction given to the jury, after proofs were closed, to render a verdict for the defendant.
The action was brought to recover possession of two first mortgage bonds, for $1000 each, made by the Toledo, Nor-walk and Cleveland Railroad Company, September 1, 1857, payable to Alfred Kelly and George S. Coe, “ or the holder” thereof, on the 1st of August, 1863, with interest thereon at the rate of seven per cent, payable semi-annually, on the first days of February and August in each year, upon presentation of the coupons annexed; which bonds, the complaint alleges to have been wrongfully taken from the plaintiffs’ possession in November, 1860, and to be detained from him by the defendant. - The answer denies the plaintiffs’ ownership, and avers that the defendant purchased the bonds in his hands through the firm of Thomas Denny & Co. brokers, in the ordinary course of business, in good faith, without any knowledge or notice of the alleged interest of the plaintiff therein.
Evidence was given upon the trial which was sufficient, I think, to warrant the jury, if the case had been submitted to them for their determination, in finding the following facts: Five hundred and twenty-five bonds of the description mentioned in the complaint, and no .more, were issued by the company; they were numbered consecutively front one to five *544 hundred and twenty-five inclusive; and, annexed to each, and upon the same paper, were twenty-four interest coupons, marked with corresponding numbers; which numbers- upon the bonds and coupons, respectively, constituted the only difference between them each, and each of the others. ! Taking bond number two hundred and twenty-five and one of its coupons, as samples, they were of the form following:
“ United States of Amebica, State of Ohio. $1000. Ho. 225. Toledo, Horwalk and Cleveland Bailroad Company. Bond. Secured by lien on the whole road. The Toledo, Horwalk and Cleveland Bailroad Company acknowledge to owe Alfred Kelly and George S. Coe, or bearer, one thousand dollars for money borrowed to aid in the construction. of their railroad,- which sum said company, promise to pay to the said Alfred Kelly and George S. Coe, or the holder hereof, at the office of the Ohio Life Insurance and Trust Company, in the city of Hew- York, on the first day of August, 1863, and also interest thereon at the rate of seven per cent per annum, semiannually, on the first days of February and of August of each year ensuing the date hereof, until the said principal sum shall be paid, on the presentation of the annexed interest warrants, at said office.; and said company further agree, that this obligation, and all rights and benefits arising therefrom, may be transferred, by general or special indorsement, or by delivery, as if the same were a note of hand, payable to bearer, and hereby waive all benefits from valuation or appraisement laws,
IrL testimony whereof, the said company have hereunto caused to be affixed their corporate seal, and [L. S.] these presents to be subscribed by their president, the first day of September, 1851.
C. L. Boalt, President
The Toledo, Horwalk and Cleveland Bailroad Company will pay to the holder hereof, at the office of the Ohio Life Insurance and Trust Company, in the city of Hew York, on the first day of August, 1863, thirty-five dollars interest due on that day, on their bond Ho. 225. '
C. L. Boalt, President”
*545 In November, 1860, the plaintiff, who was then the owner of five of those bonds, with their coupons, numbered from 336 to 340, inclusive, placed them in a tin box and deposited the same in a bank for safe keeping until the next day> whence such box, with its contents, was surreptitiously taken by some thief, or person other than the owner. The plaintiff immediately published a notice of his loss in several newspapers, and also distributed among bond dealers and brokers of the city and elsewhere, a handbill to the same effect; but neither the defendant nor his brokers saw such notice.
Up to the time of the loss, the semi-annual coupons had been regularly presented to the agent of the company, and pasted into a book in consecutive order according to their numbers; no duplicates ever having been offered during that period. But, on examining the paid coupons for February, 1861, it was found by the company that three of the coupons due that month and so paid, and numbered respectively 225, 238 and 445, were duplicates of three others, bearing the same numbers, which had also been presented and paid. Two of those six coupons, numbered 225 and 238, thus duplicated, had been cut by the defendant from the bonds so purchased by him through Denny & Co. and had been paid to him by the company’s agent. The numbers of those coupons corresponded with the numbers upon the bonds in the hands of the defendant, and the two coupons of which those were duplicates had been taken from other bonds bearing the same numbers. In few words, the evidence so given, it appears to me, would have authorized the jury, if they believed the testimony to be true, to find that two of the- four bonds numbered 225 and 238 belonged originally to the plaintiff.
But that was not enough to entitle plaintiff to a recovery, It was also incumbent upon him to prove, by the testimony of experts, or by the exhibition of the papers themselves or otherwise, such facts as would authorize the jury to find that the numbers of the particular bonds in controversy had been changed. Nor would that have been sufficient. The plaintiff was also bound to show that the bonds, at the time *546 they were purchased by Denny & Co. or came to the hands of the defendant, presented such an appearance as ought to have created a suspicion in the minds of prudent, careful experts engaged. in the businesss of dealing in such securities. For, although these bonds, payable as they are to the holder, and being by their terms, transferable by delivery, are so far negotiable as to be covered by the rule which protects bona fide purchasers of negotiable securities, even though stolen or fraudulently obtained; (State of Illinois v. Delafield, 8 Paige, 527 ; Gould v. The Town of Venice, 29 Barb. 452 ; Mor. Can. and Banking Co. v. Fisher, 3 Am. Law Reg. 423 ; White v. Vermont and Mass. R. R. Co., 21 How. U. S. R. 525 ; Mechanics’ Bank v. N. H. R. R. Co., 3 Kernan, 599;) yet it is only a purchaser in good faith, one having no such knowledge or information, either from the appearance of .the document itself, or otherwise, as would put an honest, careful man upon inquiry in regard to the real ownership, who is thus protected. It may be added in this connection, that the determination' of all questions of fact touching the bona or mala fides of such a purchase is exclusively within the province of the jury. (Williamson v. Brown, 15 N. Y. Rep. 354. Tuttle v. Jackson, 6 Wend. 213. Ayer v. Hutchins, 4 Mass. R. 370. Cone v. Baldwin, 12 Pick. 545. Grant v. Vaughan, 3 Burr. 1516. Peacock v. Rhodes, 2 Doug. 633. Fowler v. Brantley, 14 Peters, 318.)
The question then is, did the plaintiff prove such facts upon the trial as would have justified the jury, had the evidence been credited by them, in finding that the bonds in question ever belonged to the plaintiff, and that they presented such an appearance, when bought by Denny & Oo. for the defendant, as ought to have put them or the defendant upon their inquiry ?
Neither of the four bonds appears by the case to have been shown to the jury; and, of course, they could have no knowledge as to the appearance of the instruments from occular inspection. Indeed, the only ■ evidence given upon the trial, which is now claimed by counsel to have tended, even remotely, to prove that the bonds and coupons in the hands of the defend *547 ant were not, in appearance, perfectly correct, and precisely like all the others of the same class issued by the company, is found in the testimony of Mr. Luce, the treasurer, who superintended the payment and registering of the coupons. That witness, after stating that he saw and examined the two bonds held by the defendant, in the winter of 1861, and that “ on seeing them, there appeared to be no evidence of their being counterfeits,” that he then “ looked at the numbers, and concluded it was possible the numbers might have been changed,” was further interrogated and testified as follows *.
Q. Look at the bonds now produced by the defendants counsel, and shown you, being numbered 225 and 238, and state whether or not they are the bonds which the defendant exhibited to you at the interview you have spoken of.
A. They are.
Q. State whether or not they were in the same condition then as now, in reference to the paper pasted behind “No. 238,” in the bond of that number, and the pieces of paper pasted behind the coupons of August 1, 1863, in each bond.
A. I can’t state specifically as to the coupons, I remember there were pieces of paper pasted back of one of the bonds, and some of the coupons.
Q. Did you hold them up to the light to examine the coupons ?
A. Yes, sir, I did.
Q. What did you discover by such examination ?
(Objected to. Withdrawn in consequence of the objection.)
Q. State how the appearance of the coupons as then held up to the light by you corresponded with their present appearance when held up to the light ?
A. It was the same.
Q. State what you refer to as this appearance of the coupons ?
A. The thinness of the paper where the number is; the brightness of the ink, with which the numbers are made, and the paper pasted on the back.
I think we may safely assume that the papers thus produced by the. defendant were the bonds purchased by him through Denny & Co,, and, also, that the bonds so exhibited to *548 the witness and placed in his hands, were then in the condition and exhibited the appearance indicated in the second of the above questions put by the plaintiff's counsel, without objection, and tacitly assented to by the responsive answer of the witness ; as well as the further fact that when such bonds and coupons were held up to the light, it clearly appeared that the paper was thin where the number was placed.
It appears to me, too, that, inasmuch as the defendant had offered no proof to show that the bonds and coupons had been altered in his hands, the jury had reason to believe the documents were in the same condition when purchased which they exhibited at the time of the trial. They would, therefore, have been justified in finding that, when the purchase was made, a paper was pasted behind the number upon one of the bonds, and another paper was similarly pasted behind the number on each of the coupons which became due on the same day, to wit, the 1st of August, 1863 ; as well as that the papers were thin where the numbers were placed.
Those facts, if the jury had been permitted to find them, would, in the absence of all evidence that the other two duplicates had been altered or changed from their original condition, have authorized the conclusion that the bonds held by the defendant were a portion of those which had been stolen from the plaintiff; and, it seems to me, they would likewise have been sufficient to sustain a finding that the bonds and coupons, when purchased, presented such suspicious marks, or rather, exhibited, of themselves, such evidence that they had been tampered with, as ought to have put the buyer upon his guard, and induced further -inquiry.
I am, therefore, of opinion that when the case was closed and submitted, there was-enough evidence before the jury to have authorized a verdict for the plaintiff; and that the direction to render a verdict for the defendant was, consequently, erroneous.
The judgment should be reversed and a new trial granted, with costs to abide the event.