ABNER P. POWERS, *et al.* plaintiffs in error, *vs.* THE INFERIOR COURT OF DOUGHERTY COUNTY, *et al.* defendants in error.

The Act of 1855, " to authorize the county of Dougherty to aid in constructing the Georgia and Florida Railroad, between Albany and Americus, or any other Railroad running to said county, by the subscription for stock, and the issue of bonds therefor, upon a vote of the citizens," is constitutional.

In Equity from Dougherty. Decision by Judge ALLEN, at Chambers, 25th January, 1857.

This was a bill filed by George Walker and Abner P. Powers, against the Inferior Court, Tax Collector and Sheriff of Dougherty county, for an injunction, to restrain the collection of certain tax executions issued against complainants.

The bill states, that complainants, although non-residents of Dougherty county, are the owners of considerable real and personal estate situated therein; and were the owners of said property prior to the 24th day of November, 1855. That on said day the General Assembly of the State of Georgia

6

passed an Act authorizing the Inferior Court of said county to submit the question of subscribing for stock in a Railroad to the legal voters of said county; and if a majority of the votes cast should be in favor of subscription, then the Inferior Court was authorized to subscribe for a certain amount of capital stock, to issue bonds and to assess and levy a tax for the payment of the interest accruing on said bonds, and for the ultimate redemption of the bonds themthemselves.

The following is the Act referred to :

*An Act to authorize the county of Dougherty to aid in constructing the Georgia and Florida Railroad between Albany and Americus, or any other Railroad running to said county, by the subscription for stock and the issue of bonds therefor, upon a vote of the citizens.*

Approved, Nov. 24th, 1855.

1. Section I. *Be it enacted, &c.*, That the county of Dougherty shall be a corporation with all the necessary powers and liabilities for the purposes of this act, and shall be represented in its corporate capacity by the Inferior Court of said county.

2. Sec. II. *Be it further enacted,* That on the first Monday in January, 1856, and any time thereafter which shall be determined, ordered and published by the Inferior Court giving at least thirty days notice thereof, the legal voters of Dougherty county shall assemble at the Court House, and the Election Precincts in said county, and vote, "county subscription" or, "no county subscription." The election shall be held and conducted in the same manner as elections are required to be held for county officers, and the returns shall be made to the Justices of the Inferior Court, who shall consolidate the returns and enter the result upon the minutes or records of the Court, and if a majority of the votes so cast

shall have been for "county subscription," then the Inferior Court shall subscribe not less than one hundred thousand dollars, nor more than one hundred and fifty thousand, to the capital stock of the Georgia and Florida Railroad Company, or such other Railroad Company as may be indicated on a majority of the votes cast for "county subscription;" and shall issue bonds of Dougherty county therefor to such Railroad Company in payment for such stock at par value, in amounts not exceeding one thousand dollars each, payable not exceeding ten years from date, bearing interest at seven per cent. per annum payable semi-annually at such place or places as the said Inferior Court shall determine.

3. Sec. III. *Be it further enacted*, That the capital stock subscribed by Dougherty county in the Georgia and Florida Railroad Company, or any other Company, under the provisions of this act, as well as the resources derivable from the county tax shall be pledged for the redemption of the bonds, and the said stock shall not be used or transferred for any other purpose, but the dividends of profit shall be appropriated to the payment of interest on bonds, and the stock shall be appropriated to the redemption.

4. Sec. IV. *Be it further enacted*, That the Inferior Court of Dougherty county shall assess and collect a county tax of such per cent. upon the State tax as shall be sufficient to pay the interest, protect the credit and should it be necessary after the application of the county Railroad stock for that purpose, to provide for the redemption, at maturity, of said county bonds as may be issued under this act; *Provided*, that nothing in the foregoing sections of this act shall be so construed as to pledge or appropriate any portion of the State tax to be raised in said county for the payment of interest on, or redemption of said Bonds.

The bill further states, that in pursuance of the provisions of said Act, the Inferior Court admitted an election, which was held on the first Monday in January, 1856, and at which

a majority of the votes cast, was in favor of "county subscription;" and said Inferior Court, therefore, subscribed for $150,000 stock in the Georgia and Florida Railroad, and issued bonds for that amount. That afterwards said Inferior Court assessed and directed to be collected, a tax of a certain per cent. upon the State tax, to meet the liabilities incurred and arising from said bonds. And the Tax Collector of said county had issued executions against complainants for their proportion of said tax, and the Sheriff, in whose hands said executions had been placed, was proceeding to levy and collect the same out of the property of complainants.

. The bill charges that the said Act of the Legislature is unconstitutional, null and void, and prays that said executions be enjoined.

The Chancellor refused to sanction the bill or to grant an injunction, and counsel for complainants except, and assign error upon the following grounds:

1st. Because the Act of the Legislature, upon which the Inferior Court acted, is unconstitutional in this, that it gives to said Court unlimited power of taxation for Railroad purposes.

2d. Because said Act incorporates the county of Dougherty, without any object specified.

3d. Because the taxing power is legislative and not judicial, and that the Legislature cannot delegate a power to tax, it being a delegated power to them.

4th. Because said Act authorizes a citizen of the county of Dougherty to be taxed for a private corporation.

5th. Because it takes private property for public use, without just compensation.

6th. Because it is unjust and unequal in this, that it taxes the citizens of Dougherty county, and not of the State at large, and is partial.

7th. Because it authorizes a tax upon the property of com-

plainants, they being citizens of this State, without their being heard, either by their vote or otherwise.

8th. Because the citizens of Dougherty county are taxed, when said Railroad runs through other counties, Lee and Sumter, whose citizens are not taxed.

9th. Because said Act has seriously damaged the property of complainants, by preventing the Railroad from being built to the town of Gillionville.

10th. Because the body of the Act contains matter, different from its caption or preamble.

P. J. Strozier, for plaintiffs in error.

*By the Court.*—Benning, J. delivering the opinion.

The only question in this case is, whether the Act of 1855, "to authorize the county of Dougherty, to aid in constructing the Georgia and Florida Railroad between Albany and Americus, or other Railroad running to said county, by the subscription of stock and the issue of bonds therefor, upon a vote of the citizens, is constitutional? If the Act is constitutional, the decision of the Court below, there is no doubt, was right.

This Act makes "the county of Dougherty," a corporation; makes the Inferior Court of that county the representative of that corporation; requires that Court, at the option of the "legal voters" of the county, to subscribe, not less than $100,000, nor more than $150,000, to the capital stock of the Georgia and Florida Railroad Company, or such other company as might be "indicated" by a majority of the voters of the county, and to issue to such Railroad Company, in payment for the stock that should be so subscribed for, the county corporation bonds, bearing seven per cent. interest per annum, of which bonds, the principal was to be payable in not more than ten years, and the interest semi-annually;

pledges the stock that might be thus subscribed for, "as well as the resources derivable from" a county tax, (for which it provides,) for the redemption of the bonds; prohibits the stock that might be subscribed for, from being "used or transferred for any other purpose," but says that "the dividends of profit shall be appropriated to the payment of interest on bonds, and the stock" shall be appropriated to the "redemption;" and authorizes and requires the Inferior Court, to "assess and collect a county tax of such per cent. upon the State tax, as" should " be sufficient to pay the interest, protect the credit, and, should it be necessary after the application of the county Railroad stock for that purpose, to provide for the redemption, at maturity, of such" bonds as might be issued under the Act.   *Acts of* 1855-6.   184.

For the interest on the bonds, the " profits" of the stock were to be primarily liable, and the tax-payers secondarily liable; for the principal of the bonds, the stock itself was to be primarily liable and the tax-payers secondarily liable; in other words, the tax-payers were to lend their credit to the county, and look for their security and indemnity, to the Railroad stock got by the county on that credit, and to such benefits of a general nature as might flow from the Railroad. This was the great *effect* of the Act.

This being so, it is manifest, that whether this security or indemnity was sufficient or not, would depend on what would be the value of the purchased stock, added to what would be the value of the benefits conferred by the Railroad.   If it should be so, that *this* stock would all the time be at or above par value, the stock itself would be a source of full security or indemnity.   If it should be so, that the stock would be below par, yet, still, if its value added to the value of the benefits conferred by the Railroad, would make a sum equal to what would have been the value of the stock, if the stock had been at or above par, then the stock and these benefits taken together, would be a source of full security or indemnity.

Powers et al. vs. The Inf. Court of Dougherty County et al.

It could not be known before the completion of the road, what would be the value of the stock, nor what would be the value of the benefits to result from the road: indeed, what would be the value of these benefits, could not be known with anything like certainty afterwards. All that could be known before-hand on these points, was what might be the opinion on them, of those persons best qualified to form an opinion on them, and most interested to form that opinion correctly. Those persons, in very large proportion, were the voters of Dougherty county. And, for knowing their opinion on the points the Act provided.

And their opinion *was* ascertained. When those voters voted "subscription," they proclaimed, that they considered the value of the stock and the value of the benefits to result from the road, to be at least equal to the value of the bonds, for in so voting, they agreed themselves to endorse the bonds on the sole security of that stock and those benefits.

As to the sufficiency of the security or indemnity, this, then, was the opinion of the persons who were, in large part, those who were best qualified to form an opinion on that subject, and most interested in that opinion being a correct one.

And this opinion has not yet been refuted. Indeed it is an opinion that can be refuted by nothing but the *event;* and the event lies still far in the future, as far in the future as the winding up of the Railroad company. And indeed it is an opinion that stands as yet, unweakened by any counter *opinion.* There is not a counter opinion expressed even in the bill. Whereas it is an opinion that stands supported by the concurring opinion of all the stockholders in the road. And many of them must be persons who can look only to their stock for their security.

If this opinion was correct, then, the security and indemnity provided by the Act for the county tax-payers was full,

And certainly such an opinion as this is entitled to some respect.

At all events, such was the only security and indemnity provided by the Act, viz: the stock taken by the county and the benefits to result from the road.

Is it proper to count these benefits in counting the security and indemnity given, to the county tax-payers?

There is a law which compels every man to contribute so much labor every year to keeping up the common roads. And in counting his indemnity, there is nothing to count but the benefits of a general nature to result from the existence of common roads.

Every man has rights in the common road? True. And every man has rights in a Railroad. A Railroad is a common carrier; and every man has the *right* to compel a common carrier to carry him and his goods, on the payment to the carrier of what the law deems compensation.

The difference in the two cases, therefore, is one merely of degree. The compensation may perhaps be *better* in *the* one case than in the other, that is all. One thing is certain; these are real benefits, such as " put money in the purse." In the neighborhood of the Railroad, land rises; wages advance.

So much, then, for the Act viewed in its great *effect;* the effect complained of in this bill in equity. That effect, as we have seen, was, in substance, to compel the payers of the county tax to lend their *credit* to the county on the security and compensation of the Railroad stock taken by the county, and of the benefits to flow to the public from the existence of the Railroad.

Now what *means* did the Act take to accomplish this effect? It made the county of Dougherty a corporation, represented by the Inferior Court of that county; it required such Inferior Court to issue to the Railroad company the bonds of the county to the extent of from $100,000 to $150,000 in payment for so much stock in the company; it pledged this stock for the payment of the bonds; it enjoined the Inferior

Court, in case this stock should prove insufficient to pay the bonds, to assess and collect a county tax that should be sufficient to pay the bonds. These were the *means* the Act took to accomplish the effect.

Such then being the Act in its *effect*, and in the means it took to accomplish that effect; is it constitutional? This is the question.

And first as to the Constitution of the United States.

This Act is the Act of a State, and therefore, if it violates any part of the Constitution of the United States, the part must be some one of those parts which impose restrictions on the States.

Of those parts, there is one which says, that no State shall pass any " *expost facto* law, or law impairing the obligation of contracts. But no law except a law relating to crime, can be an *expost facto* law; and this Act is not a law relating to crime. And no law except a law relating to existing contracts, can be a law impairing the obligation of contracts; and this Act is not a law relating to existing contracts. This part then, is not violated by the Act.

The others of those parts are, if possible, still less violated by the Act. It is useless to refer further to them.

There is a clause of the Constitution in these words : " nor shall private property be taken for public use without just compensation;" but this clause is in the amendments; and the amendments restrict, not the power of the States, but the power of the United States. 7. *Peters,* 243.

Besides, there was in this case, what, perhaps, it is to be presumed, for the present at least, *was* "just compensation."

In brief, this Act, whether considered in its *effect*, or in its *means*, does not appear to us to be contrary to any thing in the Constitution of the United States.

Secondly, as to the Constitution of the State.

And first, was the Act, considered in its *effect*, in accordance with the Constitution of the State?

The Act in its effect, was, as we have seen, an Act to com-

pel the payers of the county tax of Dougherty county, to lend their credit to that county, on the security of the stock to be taken by the county in the Railroad company, and of the benefits to result to the public from the road.

Every law passed by the Legislature, is in accordance with the Constitution of the State, if it be a law which that Constitution has given the Legislature the power to pass. That Constitution has given the Legislature the power to pass all such laws as it may deem to be necessary and proper for the good of the State, if they are not contrary to something contained in that Constitution. "The General Assembly shall have power to make all laws and ordinances which they shall deem necessary and proper for the good of the State, which shall not be repugnant to this Constitution." This is the language of the Constitution. And, according to this language, it takes two things, and only two, to make an Act of the Legislature constitutional; one, that the Legislature shall *deem* the Act to be necessary and proper for the good of the State; the other, that the Act shall not be repugnant to the Constitution. Consequently, if these two things exist with respect to an Act, the Act is constitutional, no matter what sort of an Act it is.

And of these two things, one, it may doubtless be assumed, exists in respect to *every* Act passed by the Legislature. It may be assumed that the Legislature *deems* every Act passed by it to be an Act that is necessary and proper for the good of the State, that is, I suppose, necessary and proper to bring about some particular thing or things, which, in the opinion of the Legislature, will be for the good of the State.

The question then, whether an Act is constitutional or not, must turn upon this alone; whether the other of the two things exists in respect to the Act; that is whether the Act is "repugnant" to the Constitution.

Assuming, then, that the Legislature in passing this Act, *deemed* it to be necessary and proper for the good of the

State, the only question at present is, whether the Act considered in its *effect* was repugnant to the Constitution.

An *Act to be repugnant to the Constitution* has *to be* repugnant to something contained in the Constitution. Now of the things contained in the Constitution which is the one that the Act in its effect is repugnant to? That one has not been pointed out to us, and we are unable to discover it for ourselves. There is no provision in the Constitution, to the effect, that the Legislature shall pass no law compelling the tax payers of a county, to lend their credit to the county, with or without security, to enable the county to do this thing or that thing.

There is nothing in the Constitution, saying that the Legislature shall pass no law interfering with private rights, with or without compensation. If there had been, many laws that now exist, or that have existed, could never have existed.

Among them I may mention the following:

1. Charters to Railroad companies, allowing the companies to take the land over which their railroad is run, on paying for the land whatever arbitrators or a jury might say the land was worth.

2. Charters to cities, allowing them to open and to close streets; to prescribe the materials, &c., out of which houses are to be built; above all, allowing them to lay and collect taxes, and not giving the tax payer anything by way of indemnity or compensation, except such benefit as may result to him from the money's being well spent in public affairs.

3. Acts allowing cities to take stock in railroad corporations, and in banking corporations. In every such case, the money with which such stock is paid for, must come directly or indirectly out of the private pocket of the tax payer. See a case decided at Macon, January, 1857, on this question.

4. Acts requiring the State itself to take stock in such corporations. The State must take the money, with which it purchases such stock, from the tax-payer.

5. Laws allowing the Inferior Court, on the recommendation of the grand jury, to lay and collect a county tax.

6. Laws authorizing war. In every such law, there is asserted the principle, that the State may compel the citizen to march into the cannon's mouth, "at the word of command," and yet not be bound to pay him or his family anything for the loss of his life or his limb. Pensions are gratuities. If we admit that the State may compel its very best men to yield it their lives, whenever it deems the public good to require a war, is it not like straining at a gnat and swallowing a camel, to deny that the State may compel its citizens to yield it a part of their credit, or of their property, whenever it deems the public good to require something done, which cannot be done without a part of their credit, or of their property?

7. Certain laws which I will call laws of negation.

1st. Laws saying that a man shall not lay out his money in negroes, if these have been imported into the State from another State, for the purposes of trade.

2d. Laws stopping a man from work and business, every seventh day.

3d. Laws depriving married women of liberty and of the right of property laws depriving all women of political rights.

4th. Laws depriving men of their liberty for debt. They get no pay for the time lost in prison.

5th. Laws depriving men of property, of liberty, of life, for crime.

6th. Laws depriving a whole race, of every right, except the right to life; and this, not for debt, not for crime; the laws of slavery.

In many of these instances there is no compensation offered or thought of, except that sort of indirect compensation which consists, in good done to the public.

The argument of the plaintiff's to make out the Act, considered as to its effect, unconstitutional, was, in substance

this, that the Act was an *unjust* law.　See the 4th, 5th, 6th, 7th, 8th, and 9th grounds of the bill of exceptions.

Their counsel did not, however, cite any particular clause, or part of either the Constitution of the United States, or the Constitution of the State, as a clause or part, saying that a State shall not pass any unjust law.

What then is this argument worth?

First: Suppose it to be true, that the Act *is* unjust in its effect; does that make it repugnant to any thing contained in either Constitution.　Is there any thing contained in either, that says, that no unjust law shall be passed?　There is not.

Secondly: But it cannot be admitted, that the Act is unjust, at least in the sense of the word unjust by which Courts must be governed.　So far as they are concerned, justice is law—the law of the land, not some "higher law."　And then, this Act gives, as we have seen, what may be considered indemnity until the event shows it not to be indemnity; and I suppose, that an Act touching private rights, but giving indemnity, may be tolerated by even "the higher law."

If then this Act considered as to its *effect*, was not repugnant to any thing in the Constitution of the State, was it, considered as to the *means* it took to accomplish that effect, repugnant to anything contained in that Constitution?　This is the remaining question.

The *means*, the Act adopted for this purpose, may, as we have seen, be stated to be these; it made "the county of Dougherty" a corporation, with the Inferior Court as its representative; it required the Inferior Court to issue the bonds of the county to the Railroad company, amounting to not less than $100,000, and not more than $150,000, in payment for so much stock of the company; and it required that Court to assess and collect a county tax sufficient to pay the bonds in case the bonds could not be collected out of this purchased stock.

Was the Act in respect to these, its *means*, repugnant to any thing in the Constitution ?   If so, to what thing ?

Nothing was pointed out to us as such a thing by the plaintiff, either in their bill of exceptions, or in the argument of their counsel.

The only grounds in the bill of exceptions bearing on the present point, are the first, second and third.

Of these, the first is, that the Act gives to the Inferior Court *unlimited* power of taxation for Railroad purposes. But in fact, the Act in effect, gives that Court power to collect no more in taxes than shall be sufficient to pay on bonds that cannot exceed $150,000 in amount, such balance as may remain due on them after certain Railroad shares, bought with those bonds, shall have been applied to the payment of the bonds.

The second is, that the "Act incorporates the county of Dougherty, without any object specified."

But what the object was, is apparent.   It was to enable the *county* to aid in the construction of the road.

Besides, is every Act which merely fails to *specify* its *object*, repugnant to the Constitution ?   Surely not.

The third is, that the taxing power is legislative, and not judicial; and that the Legislature cannot delegate a power to tax, it being a delegated power to them."

Admit it to be true, that the taxing power is legislative and not judicial, yet what of it ?   This Act does not seek to make the taxing power judicial.   This Act *itself imposes* whatever tax there is imposed : it confers on the Inferior Court only the power to "*assess*, and *collect*," the tax.   It sets a limit beyond which, the tax cannot go, viz : the amount that may remain due on the bonds after their stock, dividends and all shall have been applied to their payment.   The office which it confers on the Inferior Court, is, merely to apply this stock to the payment of the bonds, and then, if the stock shall not prove sufficient to pay the whole of the bonds, to assess and collect, in taxes, enough to pay the balance.   The Act can-

not tell whether there will be any balance; nor whether, if there shall be any, what will be its amount. So, it requires the Inferior Court to ascertain these things, and when it has done so, to regulate itself by them.

In this respect, the Act does no more than what is done by the general tax Act. That Act makes it the duty of the Governor and Comptroller General, to "assess such a rate per cent. not exceeding one twelfth of one per cent. on the entire amount," (of the taxable property,) "as will raise an amount of revenue, corresponding to the wants of the State, and notify the several tax collectors throughout the State, of the rate per cent. so imposed, and the amount to be collected by him in each county." This amount, the Act says, shall not exceed $400,000 exclusive of the expenses of collection.—*Acts of* 1851–'2, 291. *Acts of* 1853–'4, 109.

The taxing power no more pertains to the executive department, than it does to the judiciary department.

There are other Acts still more nearly resembling this; as first, the Act of 1821, to authorize the Inferior Courts to levy extraordinary taxes on the recommendation of two-thirds of the grand jury. This Act merely sets a limit to the Court's taxing powers. The tax is not to exceed "fifty per centum on the general State tax annually." *Cobb's Dig.* 184.

Secondly: The Act of 1856, to authorize the Inferior Courts, upon the recommendation of the grand juries, to assess and collect a tax for the payment of "jurors." This Act authorizes the justices of those Courts, on the recommendation of the grand juries "to assess and raise a tax for the reasonable compensation of the grand and petit jurors." Here is rather a wide margin given to those Courts. *Acts of* 1855–'6, 274.

In all of these cases, the question is, whether the power given to one department, be the power confined within limits or not, be it great or small, certain or uncertain, is a power "properly attached" to one of the other two departments. The words of the Constitution are, "no person or collection

of persons, being of one of those departments," (the legis-
lative, executive and judiciary departments,) "shall exercise
any power properly attached to either of the others, except
in the instances," by itself "expressly permitted." *Cobb's
Dig.* 1111.

Now, can it be said with truth, that such powers as those
which the Acts aforesaid, attach to the executive and the
judiciary departments, respectively, are such as would be
more "properly attached" to the legislative department?
Ought the Legislature to stay in session merely to do what
these Acts require the Governor and the Comptroller General
and the Inferior Court to do; that is to say, merely to assess
and collect a tax. the elements for ascertaining the amount of
which, are fixed. Surely not.

"The Legislature cannot delegate a power to tax; it being
a delegated power to them." Is this proposition true?

The Constitution, as we have seen, gives to the Legislature
power to make all laws which it may deem necessary and
proper for the good of the State, which shall not be repug-
nant to that Constitution. And it does not say anywhere,
that the Legislature must not delegate any of this power;
nor does it say anything equivalent to saying that. True it
says: "The legislative power shall be vested in two separate
and distinct branches, to-wit: a Senate and House of Rep-
resentatives, to be styled the General Assembly." But what
*is legislative* power? It is the power to make law. If un-
limited, it is the power to make a law, for the creation, or the
destruction of *any* right. Therefore, if unlimited, it is the
power to make a law that *creates or delegates the right to
make laws*.

Now, the legislative power of the General Assembly, *is*
unlimited, if the above quoted words of the Constitution *by
themselves*, are to be taken as the criterion. Those words
merely say that the legislative power shall belong to the Gen-
eral Assembly. And, so far as the present argument is con-
cerned, those words are to be taken by themselves; for the

question is, whether *those words* amount to saying, that the General Assembly shall not delegate the power to legislate.

It follows then, that if we go *by those words*, we must say, not that the Legislature cannot delegate legislative powers, but that it can delegate legislative power.

And legislative bodies have it seems, generally considered, that the legislative powers which they possess, was a power authorizing them to delegate legislative power.

The British Parliament, possessing the legislative power of Great Britain, has by virtue of that power delegated to a company of merchants, the power to make laws for the fourth part of the people of Asia.   So it every day delegates to British colonies the right to make laws for themselves, within certain limits.   So it delegates more or less, of legislative power to cities, and other municipal corporations; and even to mere business corporations, for it gives to these the power to make by-laws.

Our Congress gives to the territories, the power to make their own laws, within certain limits.

Our own State Legislature gives to cities, the power to make various laws for themselves : it creates numerous business corporations with the power to make by-laws : it confers on certain of the Courts the power to make " rules of Court."

But is it of any consequence in the present case, whether the proposition in question is true or not?   Is there in *fact* any delegation of legislative power, by this Act?   Is the power merely to "assess and collect" an imposed tax, a power that is legislative ?   I think not.   To say so, is to say that the Governor and Comptroller General and the tax collectors, when they are in the exercise of the powers conferred on them by the general tax law, are in the exercise of legislative power, for when they are in the exercise of those powers, they are assessing and collecting the State tax.

The result is, that this Act, considered with respect to the

7

*means* which it took to produce the effect which it did produce, is not in our opinion unconstitutional.

There remains but a single point. The tenth ground in the bill of exceptions is, that " the body of the Act contains matter not contemplated by the caption or preamble."

We think that the body of the Act, merely provides a mode of payment for the bonds referred to in the title. And it is to be supposed, that the title contemplated a payment of the bonds to which it referred.

Upon the whole, therefore, we think that the Act was constitutional, consequently we think that the Court below was right in refusing to sanction the bill.

It is understood, that such Acts as this, have been held to be constitutional in others of .the States. But as decisions made upon questions growing out of the Constitutions of other States, cannot have much weight in questions growing out of the Constitution of this State, such decisions have been regarded by me, as hardly worth citing.

Judgment affirmed.