JOHN T. HARCOURT ET AL. v. J. B. GOOD, SHERIFF, ETC.

1. In a suit by injunction to restrain the collection of a tax imposed by the Police Court of Colorado county, on the twenty-sixth of November, 1867, on the people and property holders of the corporation of the town of Columbus, to pay for the redemption of the bonds of the town of Columbus, to the amount of $12,000, issued and negotiated by the town of Columbus, under the authority and direction of the Police

Court of Colorado county, to aid in the construction of a railroad bridge over the Colorado river at Columbus; *held*, that such tax could be collected.

2. (On rehearing.) Such tax could be enforced even though the election was held only in the town of Columbus, was ordered by the police court, and held under Ordinance 10, passed by the Convention of 1866, under the general election laws at the time.

APPEAL from Colorado. Tried below before the Hon. L. Lindsay.

The material allegations of the bill are, that at a special term of the police court of said county, on the twenty-first of June, 1867, an election was ordered to be held in the town of Columbus, for the purpose of authorizing said town to become a stockholder in the B. B. B. & C. R. R. Co., to the amount of one hundred and twenty shares of stock of $100 each; and for the payment of the same, that the said town borrow or issue its bonds and negotiate them for $12,000, with coupons attached, payable in installments of $3000, January 1, 1870, 1871, 1872, 1873 and 1874, with ten per cent. interest, payable annually, first of January, for which coupons will be attached.

That said election was held in said town of Columbus on the sixteenth of November, 1867, which resulted in favor of said proposition; and at a called term of said police court, held on the twenty-sixth of November, 1867, the said police court made an order and decree "that the town of Columbus become a stockholder in the B. B. B. & C. R. R. Co., by taking one hundred and twenty shares of stock in the company, and in order to pay for the same, the said town is authorized and will issue its bonds for $12,000, United States currency, in amounts not less than $100 each. The whole amount payable by installments of $2400, January 1, 1870, 1871, 1872, 1873 and 1874, with interest from date at ten per cent., payable January 1, annually, for which coupons will be attached

to each bond, and are made receivable, when due, in payment of any taxes, fines or liabilities due the town; the bonds or funds realized from them to be used by the company in paying for the railroad bridge at Columbus, and for what may be necessary to its use and operation."

It was further ordered by said police court, that a special tax shall be levied and collected on all persons, property and subjects of taxation in the town of Columbus, on which a tax may be levied or imposed by the State, to be applied in payment of the principal and interest of said bonds as they may fall due; the rate or amount of the tax thus imposed to be fixed by order of court, etc. It was alleged that at the regular term of said police court held January 6, 1866, the said court proceeded to levy a special tax upon all persons, property, occupations, and other subjects of taxation within the town of Columbus, on which a tax may be levied by the State, for the year 1869, as follows, viz.:

"On all persons (capitation tax) and property, real and personal, an amount equal to that levied and imposed by the State; and upon all occupations, trades, professions, and other subjects of State taxation, an amount equal to one-third of that levied by the State."

That at the regular term of said police court, held on January 7, 1870, the said court proceeded to make the following order, viz.:

"In order to meet the coupons due January 1, 1868, 1869, 1870 and 1871, unpaid, and those due January, 1871, and likewise the first and second installments of the bonds issued by the town of Columbus under orders of this court, made November 26, 1867, to the B. B. B. & C. R. R. Company, here referred to, a special tax is hereby levied upon all persons, property, occupations and other subjects of taxation within the town of Columbus on which a tax may be levied by the State, for the year

1870, as follows, viz.: On all persons (capitation tax) and incomes, an amount equal to that levied and imposed by the State; and upon all occupations, trades and professions in said town, a tax equal to one-third of that imposed by the State, for the year 1870; and upon all property, real, personal, mixed and other subjects of taxation in the town of Columbus, one per cent. *ad valorem*, is to be levied and collected under the provisions of the law providing for the collection of State taxes. It is therefore ordered that the unpaid coupons due January 1, 1868, 1869, 1870 and 1871, are made receivable by the assessor and collector in payment of the special tax here levied for the year 1870, and he will collect, receipt for and report as the law directs."

It was further alleged that the town of Columbus did issue and negotiate its bonds for the amount and in the manner prescribed by said police court, but they were not informed who were then the holders of the same.

"Complainants are informed, believe, and so charge, that the said B. B. B. & C. R. R. Company have not issued the stock to said town of Columbus, as provided for in said order of court, and that the said B. B. B. & C. R. R. Company, on the 11th day of June, 1868, was sold out and transferred to other parties, who have not recognized or complied with the terms upon which said bonds were issued." It was charged that the orders of said police court were from the beginning unconstitutional, null and void. That the town of Columbus was an independent corporation, working under a legal charter of incorporation, with her mayor and aldermen duly exercising their duties and able to speak for and represent the interests of said corporation, without the aid or interference of the police court. That if it be considered that the police court had any authority to act in the matter at all, they exceeded and transcended their authority, as limited and

prescribed by the act of the 6th November, 1866, entitled An act to levy taxes. By the first section of said act it is provided that an *ad valorem* tax of fifteen cents on the hundred dollars worth of property shall be levied and collected of the taxpayers of the State, and by the eighth section of said act it is provided "that the police court shall have power to levy taxes equal to one-half the amount as herein levied."

A temporary injunction was granted by the district judge.

On February 10, 1871, the defendants excepted to the bill, and filed their motion to dissolve the injunction, for the reasons:

"1. Because there is no equity in the bill.

"2. Because the bill shows on its face that the taxes complained of, and to restrain the collection of which the injunction was granted, were levied according to law, for a lawful object, and in the manner and form required by law.

"3. Because it is nowhere alleged in the petition that the police court levied a greater or higher tax than was necessary to pay the coupons and the bonds already due and owing by the corporation of Columbus.

"4. Because the writ was improvidently granted."

Defendants also demurred and made a full answer, but the answer was not sworn to.

The demurrer and exceptions were sustained, the injunction dissolved and the bill dismissed.

*Harcourt & Harcourt*, for plaintiffs in error.—The Supreme Court of the United States have correctly held that there is no limitation (in the absence of express provisions of the State constitutions) upon the legislative powers of the States as to the amount or objects (the property subject to be taxed) of taxation. (Providence Bank v. Billups, 4 Pet., 514.)

But no court has ever said that there is no limitation upon the Legislatures as to the purposes for which a tax could be authorized.

There are other familiar constitutional principles that operate as a limitation and prohibition on the power of taxation, and they should all be invoked and consulted when testing the constitutionality of a tax imposed upon an unwilling minority.

In Durach's appeal (62 Penn. St., 493), Judge Sharswood says: "Municipalities, such as counties, cities and boroughs, are public corporations, created by the government for political purposes. They are invested with subordinate legislative powers for local purposes connected with the public good. * * * According to the system universally adopted and in use, the persons residing within the district subjected to the powers of the municipality are their own governors; they choose by a majority of voices those who administer its affairs. There can be no great danger of permanent abuses under such a system, especially in small corporations. * * * The municipal government is really but a branch of the State; and whatever powers of taxation the Legislature possesses, they may lawfully grant or delegate to such bodies. There is no limitation of their powers expressed in the Constitution of Pennsylvania, as there is in the constitutions of some of our sister States; but, nevertheless, there are limitations in the nature of things. The Legislatures cannot, under the name of taxation, take private property for public use without making compensation; and a special tax levied upon an individual, or upon particular individuals, would infringe this restriction; for one mode of enforcing its payment is by the seizure and sale of the property of the delinquent, which is a direct taking."

Everything contained in the Bill of Rights is excepted

out of the general powers of government, and all laws contrary thereto are void.

By the 2d Section of the Bill of Rights of Constitution of 1866, it is guaranteed that "all freemen have equal rights." By the 7th Section, "That the people shall be secure in their houses and possessions from all unreasonable tax seizures."

By the 14th Section, "That no person's property shall be taken or applied to public use without adequate compensation being made, unless by the consent of such person."

By the 16th Section, "That no citizen of this State shall be deprived of his property except by due course of the law of the land."

Mr. Webster said that "Written constitutions sanctify and confirm great principles, but the latter are prior in existence to the former." (2 Webster's Works, 392.)

Judge Cooley, in his Constitutional Limitations, p. 36, says that "State constitutions measure the powers of the rulers, but they do not measure the rights of the governed." "It grants no rights to the people, but is the creature of their power, the instrument of their convenience."

We invite particular attention to the able and well considered opinion of Judge Cooley, in the case of The People v. The Town of Salem, 20 Mich., 452. (4 Am. R., 400.) In discussing this question, he says: "It is conceded, nevertheless, that there are certain limitations upon this power, not prescribed in express terms by any constitutional provision, but inherent in the subject itself, which attend its exercise under all circumstances, and which are as inflexible and absolute in their restraints as if directly imposed in the most positive form of words. * * * I understand that in order to render valid a burden imposed by the Legislature, under an exercise of the power

of taxation, the following requisites must appear: 1. It must be imposed for a public, and not for a mere private purpose. Taxation is a mode of raising revenue for public purposes only, and as is said in some of the cases, when it is prostituted to objects in no way connected with the public interest or welfare, it ceases to be taxation and becomes plunder. (Sharpless v. Mayor, etc., 21 Penn. St., 168; Grim v. Weissenburg School District, 57 Penn. St., 433; Brodhead v. Milwaukee, 19 Wis., 652.)

"2. The tax must be laid according to some rule of apportionment, not arbitrarily or by caprice, but so that the burden may be made to fall with something like impartiality upon the persons or property upon which it justly and equitably should rest. A State burden is not to be imposed upon any territory smaller than the whole State, nor a county burden upon any territory smaller or greater than the county. Equality in the imposition of the burden is of the very essence of the power itself, and though absolute equality and absolute justice are never attainable, the adoption of some rule tending to that end is indispensable. (Weeks v. Milwaukee, 10 Wis., 258; Reyerson v. Ulby, 16 Mich., 169; Merrick v. Amherst, 12 Allen, 504.)

"3. As a corollary from the preceding, if the tax is imposed upon one of the municipal subdivisions of the State only, the purpose must not only be a public purpose, as regards the people of that subdivision, but it must also be local; that is to say, the people of that municipality must have a special and peculiar interest in the object to be accomplished, which will make it just, proper and equitable that they should bear the burden, rather than the State at large, or any more considerable portion of the State. (Wells v. Weston, 22 Mo., 384; Covington v. Smithgate, 15 B. Mon., 491; Morford v. Unger, 8 Iowa, 82.)

"The three principles here stated are fundamental maxims in the law of taxation; they inhere as conditions, in the power to impose any taxes whatsoever, or to exact any burden for which taxation is to provide.   *   *   * In the present case it appears that the object of the burden is not to raise money for a general State interest. Its object, on the contrary, is to create a demand which shall be a burden upon a small portion of the State only. On the ground of local benefit, a small district of the State is to be taxed to encourage a local enterprise, which it is supposed will be of such peculiar local advantage that it should contribute to its construction. The road, when constructed, is nevertheless, to be exclusively private property, owned, controlled and operated by a private corporation, for the benefit of its own members.   *   *   * The money when raised is to benefit a private corporation, to add to its funds and improve its property; and the benefit to the public is to be secondary and incidental, like that which springs from the building of a grist mill, the establishment of a factory, the opening of a public inn, or from any other private enterprise, which accommodates a local want, and tends to increase local values."

The opinion of this eminent judge is a very lengthy one, and I regret that I cannot present it in full. He proceeds to show that a railroad is not a public highway, and its construction not a public purpose. They are not, when in private hands, the people's highways. He proceeds to show that this kind of taxation cannot be sustained as an exercise of the right of eminent domain.

He then uses this forcible language: "The discrimination by the State between different classes of occupations, and the favoring of one at the expense of the rest, whether that one be farming or banking, merchandising or milling, printing or railroading, is not legitimate legislation, and is an invasion of that equality of right and

privilege which is a maxim in State government. Every
honest employment is honorable; it is beneficial to the
public; it deserves encouragement. But it is not the
business of the State to make discriminations in favor of
one class against another, or in favor of one employment
against another. The State can have no favorites. Its
business is to protect the industry of all, and to give all
the benefit of equal laws. It cannot compel an unwilling
minority to submit to taxation in order that it may keep
upon its feet any business that cannot stand alone. It
scarcely seems necessary to say that what the State, as
a political community, cannot do, it cannot require the
inferior municipalities to do. When the case is found to
stand entirely outside the domain of taxation, State bur-
dens and township burdens are alike precluded; no town-
ship vote and no township majority, however large, can
affect the principle; any single individual has a right to
insist that the public do not own or control his property
for the purpose of donations."

We now refer to the following authorities in support of
the position assumed that there is no power in the State
to authorize a tax for private purposes: Cooley's Const.
Lim., 211, 212, 487; Hanson v. Vernon, 27 Iowa, 145; 3
Western Jurist, 145; 21 Penn. St., 168; 22 Wis., 666; 31
Penn. St., 189; 39 Penn. St., 82; 21 Penn. St., 160; Ty-
son v. School Directors, 51 Penn. St., 9; Morford v.
Unger, 8 Iowa, 92; Street v. Hulbert, 51 Barb., 316; Cur-
tis v. Whipple, Wis. Sup.

Private property cannot be taken for private use, even
with compensation, without the owner's consent. (Tay-
lor v. Porter, 4 Hill, 140; Powers v. Bergen, 2 Sud., 366;
39 Ills., 110, 114, 116; 83 Barb., 70; 1 Ohio St., 84, 85;
Wilkerson v. Seland, 2 Pet., 657; Hanson v. Vernon, 27
Iowa; Sedgwick's Const. Law, 155; Cooley's Const.
Lim., 530.)

Counties have no power to pledge their credit to private corporations, except such as they enjoy by prescription or are specially conferred upon them by statute. (Lafayette v. Cox, 5 Ind., 38; People v. Supervisor of Blackman, 14 Mich., 236; Cooper v. Aldan, Harr., Ch. 86; Stitson v. Kempton, 13 Mass., 271, 278; Beaty v. Knowler's Lessee, 4 Pet., 152.)

The B. B. B. & C. R. R. Company is a private corporation. (Ang. & Ames on Corp., Secs. 31, 32; 1 Red. on Railways, 53.)

Township taxation cannot be imposed except for township purposes. (Ryerson v. Utley, 16 Mich., 279; Hammett v. Philadelphia, Am. Law Reg. for 1869, 411.)

I fully concur with Judge Lindsay in the opinion that Ordinance No. 10 is not a part of the Constitution of 1866, and hence cannot give any authority or support to the act of the Legislature of the twelfth of November, 1866. (Page 219 of the Acts of the Eleventh Legislature.)

If the Ordinance No. 10 were in force, it required the assent of two-thirds of the qualified electors as a condition precedent to the exercise of the power, and the act of the Legislature violates this provision by requiring only the assent of two-thirds of those voting in the election.

We submit that the act of the Legislature is nugatory and void, because it attempts to confer a power and authority upon the county judge and police court that is not authorized by the 16th and 17th Sections of the Constitution of 1866.

By the 17th Section the jurisdiction of the police court is limited "to regulating, promoting and protecting the public interest relating to the county."

"In this country all public burdens, tribunals, courts, departments of government, and even governments themselves, are the creatures of delegated and limited author-

ity.    When the authority delegated is exceeded, the act done is null and void." (Houston Tap and Brazoria Railroad Company v. Randolph, 24 Texas, 332.)

The public interest of Colorado county was not at all concerned about the town of Columbus loaning $12,000 to the B. B. B. & C. R. R. Company.   If there was any constitutional authority for the imposition of such a tax upon the people of the town of Columbus, it could only be done by the legally constituted agents of the town.

The town being an independent corporation, could speak and act for itself.

The city council, and not the police court, was the agent to order an election, and to make contracts for, and impose a burden upon the people of the town of Columbus.

The people of the town could rebuke the mayor and aldermen at the ballot box for an abuse of the taxing power, but they could not rebuke the irresponsible county court; and in the opinion of Judge Lindsay, this is the only protection the people have against an arbitrary and oppressive tax.

When Parliament attempted to levy taxes in America, the people demanded the benefit of that maxim with which, for many generations, every intelligent subject had been familiar, "That, those must vote the tax who are to pay it."

When we consider the theory of our representative system, the wrong committed in this case is too glaring to meet the sanction of the courts.

In all public matters the people act through their chosen agents.   The Legislature is the agent of the people of the State.   The police court is the agent of the people of the county.   The city council is the agent of the people of the city or town.

It is a confusion of ideas, as well as a confusion of

rights, for the police court to order an election, or make a contract for, and vote or impose a tax on the people of the town.

It would be interesting and instructive if the defenders of this tax would explain who are the parties to this contract, and who made it.

It will be observed that there are four distinct corporations interested and concerned in this extraordinary proceeding. There is the corporation of the town of Columbus, the corporation of the B. B. B. & C. R. R. Company, the corporation of the county of Colorado, and the corporation of the Columbus Tap Railway Company. A contract has been made that the town of Columbus shall become a stockholder in the B. B. B. & C. R. R. Company, to the amount of one hundred and twenty shares of stock of one hundred dollars each, and that the town shall issue and negotiate its bonds for $12,000.

Who made this contract? Who are the parties, and what was the consideration? (1 Parsons on Contracts, 8.)

"Each county which now exists, or which may be hereafter established in this State, shall be a body corporate and politic." (Pas. Dig., Art. 1044.)

"The county courts may appoint an agent to make any contract," etc. (Pas. Dig., Art. 1055.)

"Corporations cannot exceed the powers given in their charters and make contracts not incidental to the exercise of those powers." (2 Parsons on Contracts, p. 120.)

One corporation cannot delegate its power to another corporation; *delagatus non potest delegare.*

The case of San Antonio v. Jones, 28 Texas, 19, may be·cited and relied upon as authority against us in this case. We do not think it presents any obstacle in our way.

It will be observed that the present is a very different case, presenting other and different issues.

And so far as the court expressed an opinion upon the constitutionality of the legislation in question, they expressly say that "the question has not been discussed by appellant's counsel, and we have not deemed it necessary to analyze the constitutional provision relied upon generally to impeach the validity of such laws." The court merely give their loose assent to what seems to be the weight of authority and the "larger experience" of the later decisions. But when we examine the later decisions which are cited as authority, it will be seen that they are not the late decisions so ably referred to by Judge Cooley when " he analyzed the constitutional provision which is generally relied upon to impeach the validity of such laws."

In the case of San Antonio v. Gould, 34 Texas, 70, the court again yield their assent to the decision made in 28 Texas, without discussion and without analyzing the question under the light of later decisions.

The only late decision which sustains the legislation in question is the case of Stewart v. Supervisors of Polk County, decided in 1870 by the Supreme Court of Iowa.

The case of Hanson v. Vernon was decided at the June term, 1869, and a subsequent General Assembly, by the passage of the act of April, 1870, reasserted the power to tax, and it seems that a different and divided court yielded to the popular clamor to sustain the act of 1870.

The opinion in the case is weak and contemptible, when compared with Judge Cooley's able opinion in the Michigan case.

The San Antonio case was decided under the Constitution of 1845. The present case arises under the Constitution of 1866.

The provisions are the same in each so far as they relate to this question, until we come to the 36th Section of

Article 7 of the Constitution of 1866. This is a new section, and was manifestly intended to settle this disputed question by defining the manner in which the State might encourage the construction of railroads.

The Legislature possesses no other power over the question than that prescribed by this section. *Expressio unius exclusis alterius.*

Ordinance No. 10 was not incorporated as part of the organic law, and we have the right to assume that the Convention declined to do so because of its doubtful policy and constitutionality. The question was before the Convention, and the failure to insert it as a permanent clause, giving the express authority, is the strongest kind of proof of the withholding of the power. They wisely came to the conclusion that a "tax for a private purpose is a solecism in language," as is so aptly said by Justice Lowe in the Wapello County case, 18 Iowa, 405. They wisely remembered "that by the concurrent opinion of lawyers, judges, lexicographers and political economists, as well as by the general and popular understanding, taxes are burdens or charges imposed by the Legislature upon persons or property, to raise money for public purposes, or to accomplish some governmental end." (Hanson v. Vernon, 27 Iowa, 28.) The question is ably discussed in the case just cited from 27 Iowa.

This is well fortified and supported by the case of Whiting v. The Sheboygan Railroad Company, 25 Wis., 167.

The conclusion arrived at in these late decisions is that "taxation in aid of railroads owned and operated by private individuals or corporations is unconstitutional, and an act of the Legislature authorizing county orders to be issued in aid of a railroad, and taxes to be levied for the payment thereof, on condition that the consent of the majority of the people should be manifested by ballot, is void."

This was the matured judgment of the court after the question had been "argued in the light of principle, and as a question resting on authority."

The court say, "The adjudged cases bearing upon both sides of it have been examined with that boldness and keen and searching ability to which they are ever subjected when they block up the pathway of able counsel."

This, we say, is the larger experience of the later decisions, and should be regarded as settling the question.

We hope we have said enough to invite discussion, and a serious re-examination of the "later decisions."

*Foard, Thompson & McCormick,* for appellee.

WALKER, J.—Under an act of the Legislature passed on the 6th of November, 1866, the Police Court of Colorado county, on the 21st of June, 1867, ordered an election to be held by the qualified voters of the county on the 16th of November following, for the purpose of determining the will of the people concerning the subscription of stock to the B. B. B. & C. R. R. Company, to aid in building a bridge across the Colorado river at or near the town of Columbus.

The result of the election was favorable to the measure, and twelve thousand dollars ($12,000) was subscribed to the capital stock of the railroad.

This stock was to be paid in annual installments, begining with the year 1870, for which bonds were given, with coupons attached, bearing ten (10) per cent. interest.

On the 26th of November, 1867, in pursuance of the statute, the police court of the county assessed the tax for the purpose of paying off the bonds according to their tenure and effect, and it is to enjoin the collection of this tax that this suit is brought.

Having granted a temporary injunction, his honor the district judge afterwards, on motion, dissolved the injunction and dismissed the bill, from which judgment the appeal is prosecuted to this court.

There is no novelty in the question which this record presents. On the contrary, there is no question which has so much occupied the judicial mind, even from an early period in the history of the country, and there has been a most remarkable coincidence in the action of the political power of the States, in which the General Government has uniformly concurred.

Common interest and common necessity will account for this concurrent action of the States, but until very recently the courts of the country have with a like unanimity concurred in opinion as to the competence of the Legislature to authorize counties and municipal corporations to subscribe to the capital stock of railroad and other corporations, to loan their credit, and in various ways contribute to the construction of internal improvements—regarding corporations of this kind as public in their character, holding a public franchise, and being responsible to the political power for the manner in which the franchise is to be executed.

It was not until the position was assumed by the Supreme Court of the State of Michigan, in the case of The People v. Salem, 20 Mich., 452 (that these were not public but private corporations), that any doubt was entertained by the profession or the business men of the country on this subject.

But the profound learning and ability of Judge Cooley, both as an author and a jurist, gave great weight to the opinion of a majority of the court in the Salem case, and did, undoubtedly, for a time shake the confidence both of the bench and bar in the correctness of the doctrine previously maintained with such ramarkable unanimity; but

we believe the late case of Talcott v. The Township of Pine Grove, decided in the Circuit Court of the United States for the Western District of Michigan, by Judge Emmons, will go far to restore the equilibrium of the judicial mind, and perhaps lend additional confidence to the doctrine so ably opposed by Judge Cooley in the Salem case.

We beg leave to refer to the entire opinion of Judge Emmons in the Pine Grove case, and, should our brethren concur, will have a copy of the opinion published in a forthcoming volume of our reports.

Judge Emmons has brought together in the same group (in which we beg leave to present them) the adjudicated cases of no less than twenty-six of the States, including the States of Iowa, Michigan and Wisconsin, to whose later cases as opposing authority we are referred in appellant's brief.

We have no comment to make upon the relative learning and ability of the courts rendering these decisions, were it proper for us to do so. They must stand or fall upon their own merits.

*Alabama, 3 cases.*—1854, Stein v. Mayor of Mobile, 24 Ala., 591; 1857, Mayor of Wetumpka v. Winter, 29 Ala., 651 (Plank Road case); 1860, Gibbons v. Mobile, etc., R. R. Co., 36 Ala., 410.

*California, 7 cases.*—1859, Pattison v. Supervisors of Yuba County, 13 Cal., 175; 1860, Hobart v. Supervisors of Butler County, 17 Cal., 23; 1863, Robison v. Bidwell, 22 Cal., 379; 1864, French v. Techmaker, 24 Cal., 518; People v. Coon, 25 Cal., 635; 1865, People v. Supervisors of San Francisco, 27 Cal., 655; Stockton and V. R. R. v. Stockton.

*Connecticut, 2 cases.*—1843, Bridgeport v. Housatonic Railroad Company, 15 Conn., 475; 1860, Society of Savings v. New London, 29 Conn., 174.

*Delaware*, 1 *case.*—1847, Rice v. Foster, 4 Harrington, 479.

*Florida*, 1 *case.*— 1852, Cotton v. County Commissioner of Leon, 6 Fla., 610.

*Georgia*, 2 *cases.*—1857, Winn v. Macon, 21 Ga., 275 ; 1857, Powers v. Inferior Court of Dougherty County, 23 Ga., 65.

*Illinois*, 10 *cases.*—1851, Ryder v. Alton, etc., R. R. Co., 13 Ill., 516; 1858, Prettyman v. Supervisors of Tazewell Co., 19 Ill., 406; 1859, Robertson v. City of Rockford *et al.*, 21 Ill., 451; 1860, Johnson v. Starke Co., 24 Ill., 75; 1860, Perkins v. Lewis, 24 Ill., 208; 1861, Butler v. Dunham, 27 Ill., 474; 1862, Clarke v. Supervisors, etc., 27 Ill., 305; 1862, Piatt v. People, 29 Ill., 54; King v. Wilson, 3 Chicago Legal News ; 1872, Chicago, etc., R. W. Co. v. Smith, decision just rendered in Supreme Court for Northern Division of Illinois, not yet reported.

*Indiana*, 5 *cases.*—1857, City of Aurora v. West, 9 Ind., 74; 1860, Evansville, etc., R. R. Co. v. Evansville, 15 Ind., 395; 1862, The Commissioners, etc., v. Bright, 18 Ind., 93; 1864, City of Aurora v. West, 22 Ind., 88; S. M. and B. R. R. v. Geiger, 34 Ind.

*Iowa*, 8 *cases.*—1853, Dubuque and Pacific R. R. Co. v. Dubuque, 4 G. Green, 1; 1854, State v. Bissell, 4 G. Green, 328; 1857, Clapp v. Cedar Co., 5 Clarke (Iowa), 15; 1858, Ring v. Johnson Co., 6 Iowa, 265; 1858, McMillan v. Boyles, 6 Iowa, 304; 1858, McMillan v. Lee Co., 6 Iowa, 391; 1859, Whitaker v. Johnson Co., 10 Iowa, 161; Stewart v. Supervisors of Polk County, late case reported in pamphlet.

*Kansas*, 1 *case.*—1871, County Commissioners v. Miller.

*Kentucky*, 4 *cases.*—1849, Talbott v. Dent, 9 B. Monroe, 526 ; 1850, Justices, etc., v. Turnpike Co., 11 B. Monroe, 143 ; 1852, Slack *et al.* v. Maysville, etc., R.

R. Co., 13 B. Monroe, 1; 1859, Maddox v. Graham, 2 Metc., 56.

*Louisiana*, 4 *cases.*—1853, New Orleans, etc., Co. v. Mc-Donough, 8 La. An., 341; 1856, Parker v. Scogin, 11 La. An., 629; 1856, Vicksburg, etc., R. R. Co. v. Ouachita, 11 La. An., 649; 1854, New Orleans v. Graihle, 9 La. An., 561.

*Maine*, 1 *case.*—1860, Augusta Bank v. Augusta, 9 Me., 507.

*Mississippi*, 1 *case.*—Strickland v. Mississippi, etc., R. R. Co., cited as of 21 (or 27) Miss., 209, and as 1849.

*Missouri*, 2 *cases.*—1856, City of St. Louis v. Alexandria, 23 Mo., 483; 1867, St. Joseph Railroad v. Buchanan Co. Ct., 39 Mo., 485.

*New York*, 9 *cases.*—1857, Grant v. Carter, 24 Barb., 232; 1857, Benson v. Mayor of Albany, 24 Barb., 248; 1857, Clark v. City of Rochester, 24 Barb., 446; 1858, Bank of Rome v. Village of Rome, 18 N. Y., 38; 1859, Gould v. Town of Venice, 29 Barb., 442; 1861, Starin v. Genoa, 23 N. Y., 439; 1864, Clark v. City of Rochester, 28 N. Y., 605; 1865, People v. Mitchell, 45 Barb., 208; 1866, People v. Mitchell, 35 N. Y., 551.

*North Carolina*, 2 *cases.*—1855, Taylor v. Neuberne (a navigation case), 2 Jones Eq., 141; 1858, Caldwell v. The Justices, etc., 4 Jones Eq., 323.

*Ohio*, 12 *cases.*—1852, Cincinnati, etc., R. R. Co. v. Commissioners, 1 Ohio St., 77; 1852, R. W. v. Township Treasurer of Christian Township, 1 Ohio St., 105; 1853, Cass v. Dillon, 2 Ohio St., 607; 1853, Thompson v. Kelly, 2 Ohio St., 647; 1857, State v. Van Horn, 7 Ohio St., 327; 1858, State v. Union Township, 8 Ohio St., 394; 1861, State, etc., v. Commissioners Hancock Co., 12 Ohio St., 596; 1863, Knox v. Nichols, 14 Ohio St., 260; 1863, Fosdick v. Perrysburg, 14 Ohio St., 472; 1863, State v. Goshen, 14 Ohio St., 569; Griffith v. Co. Commissioners, 20 Ohio,

Appendix, 1; Bloomington R. R. v. Gaiger (April, 1871, Vol. 4 of Law Times, State Reps., p. 98).

*Pennsylvania, 7 cases.*—1846, Harvey v. Lord, 3 Penn. St., 331; 1849, Commonwealth v. McWilliams (turnpike case), 11 Penn. St., 62; 1853, Sharpless v. Mayor of Philadelphia, 21 Penn. St., 147; 1853, Moers v. The City of Reading, 21 Penn. St., 188; 1858, Commonwealth v. County Commissioners, 32 Penn. St., 218; 1861, Commonwealth v. Pittsburg, 41 Penn. St., 278; 1862, Commonwealth v. Perkins *et al.*, 43 Penn. St., 400.

*South Carolina, 1 case.*—1857, State v. Charleston, 10 Rich., 491.

*Tennessee, 2 cases.*—1848, Nichols v. Nashville, 9 Humph., 252; 1854, L. & N. R. R. Co. v. Davidson County, 1 Sneed, 637.

*Texas, 1 case.*—San Antonio v. Jones, 28 Texas, 19.

*Vermont, 3 cases.*—1837, Goddin v. Crumps, 8 Leigh, 120; 1846, Harrison Justice v. Holland, 3 Grattan, 247; Cadis *et al.* v. Town of Swanton, late case not reported.

*Wisconsin, 3 cases.*—1859, Clarke v. City of Jonesville; 10 Wis., 136; 1860, Bushnell v. Beloit, 10 Wis., 195; 1860, Mills v. Gleason, 11 Wis., 470.

Only one of our own cases is referred to by Judge Emmons, but this is by no means the only time that the question has been before this court. San Antonio v. Jones, 28 Texas, 19; San Antonio v. Lane, 32 Texas, 405; and San Antonio v. Gould, 34 Texas, 49, are all cases which uphold the power of municipal corporations, when properly authorized by the Legislature, to loan their credit and subscribe to the capital stock of railroad corporations.

We might excuse ourselves on the rule of *stare decisis* from discussing this question, were it not of so great future moment to our rising State.

True, the Constitution of 1869, Section 32, Article 12, is sufficiently definite to guide the future action of the peo-

ple on this subject; the power is here expressly given to counties (whether it is intended that towns and cities may exercise it, is a question not yet before us).

But the case at bar comes up under the Constitution of 1866, and we think there is no doubt but that the District Court laid down the law correctly in this case.

The only limitation or restriction imposed by this Constitution is found in Section 27, Article 7, and which provides for the uniformity of taxation.

Ordinance No. 10, if a part of the Constitution, is a direct expression upon the power of towns and cities to subscribe to the capital stock or loan their credit, upon a vote of two-thirds of the qualified electors of the county, to companies, associations or corporations. But it is by no means necessary for us to assume that Ordinance No. 10 forms part of the Constitution of 1866.

The constitutions of the States are not like that of the Federal government, mere grants of limited powers; they absolutely confer all powers not restricted by the letter of the constitution. (Cooley on Constitutional Limitation, 168, and authorities referred to.)

The State and Federal courts have so understood and explained the constitutions of the States; and under this interpretation, uniform and long continued, there need be no alarm.

The liberties of the people are not threatened; the people have established no despotism over themselves.

The Legislature, to whom the people have given the power, is but the agent or servant of the people. The people retain their own sovereignty, nor will they violate or suffer it to be violated.

True statesmen and political economists are not forever drumming words of alarm into the ears of the people; nor do they seek, as is sometimes the case among our modern constitution makers, to lay down procrustean rules

and principles for the government of future generations; better the wisdom of each age take care of the age to which it belongs. The people of the present age in this government need not fear any assault upon their liberties either from the political power or from the judiciary. The question under discussion is one with which the people deal primarily; they first determine whether they will or not be taxed, and their determination at the ballot box may well be regarded in the light of a contract. Constitutions and laws should not be so framed as to leave out of view the enlarged and multiplied necessities which may arise in the progress of mankind to his ultimate goal.

But the appellants' counsel, in the able brief filed in this case, invite special attention and consideration to The People v. Salem, 20 Mich., 452.

We award to this case all that can be claimed for it, but we believe it simply to be very logical and profound reasoning upon a false premise.

As said by Judge Emmons, the case does not rest upon any peculiarity in the Constitution or laws of the State of Michigan ; its assumptions are general ; its principles would apply to the General Government, and to every State in the Union; its doctrine is, that municipal taxation for railroad purposes is not within the taxing powers of the American States.

As we have already seen, this doctrine would invalidate the statutes and decisions of nearly all of the States, as well as the acts of Congress and the decisions of the Federal courts ; and its starting point, its controlling idea, is that railroad and other like incorporations are not public but private in their character, and stand upon the same footing as mills and public houses, and that the right of eminent domain may not be exercised by the Legislature to take private property for private use.

The conclusion is undoubtedly correct in its application

to private property and private corporations, but the error consists in regarding these public franchises, controlled as they are by the Legislature, checked and guarded by conditions and provisos, created on the plea of *pro bono publico*, as private corporations.

But the maxim (for it has grown into a maxim) that private property may be condemned and appropriated to a public use, is everywhere received and held good; and without this railroads, turnpikes, plank roads, and bridges, even the common roads necessary and indispensable as they are, could never be constructed or repaired, for the right of way could never be obtained, in many cases, from private individuals. Mills, and inns called public houses, are private property; corporations are franchises.

Chancellor Kent, Vol. 3, p. 458, says "There are certain franchises which are understood to be royal privileges in the hands of the subject."

Blackstone says, Vol. 2, p. 37, "A franchise is a branch of royal prerogative, such as taking tolls for a bridge, way or wharf."

Even nations have conceded to each other (a concession generally extorted by force, it is true,) the right to toll navigable streams, bays and sounds, which are navigable waters and public to the world, except upon the conditions imposed. (See Prosser against Wapello County, 18 Iowa.)

We admit that the authorities referred to in the appellants' brief (Hanson v. Vernon, 27 Iowa, 28, and Whiting v. Sheboygan R. R. Co., 25 Wis., 167) are in unison with The People v. Salem; but they proceed upon the same idea that railroads are private corporations, and that private property cannot be taken by taxation for their benefit.

These considerations and authorities lead us to the af-

firmance of the former opinions of this court, in the cases referred to; and placing a special reliance on the incontrovertible doctrines of Talcott v. Pine Grove, we affirm the decision and judgment of the District Court.

AFFIRMED.

OGDEN, P. J., *on application for rehearing.*—We have examined the brief of the appellant filed in support of his motion for a rehearing in the cause.

It is conceded that the constitutional question presented on the orginal hearing has been correctly decided by the court; but it is maintained that the statement of the case as given in the opinion rendered by Mr. Justice Walker was inaccurate, and that by that reason a strong point relied on by the appellant was entirely overlooked.

It is true, the opinion of Mr. Justice Walker treats the case as though the police court had ordered the election holden in the whole county, while in fact the election was only ordered for, and was only held in, the town of Columbus.

We do not perceive, however, that this fact makes any difference in the practical or legal result. Let us look at the facts. A large number of the taxpayers and citizens of the town of Columbus petitioned the police court of the county in which the town of Columbus is situated, to order an election to take the sense of the qualified voters in the town, whether they tax themselves for the purpose of aiding in the building of a railroad bridge across the Colorado river at that point. The election was by the police court of the county ordered, and was held under the same rules and regulations which then governed elections in the State; the vote was declared in the usual form, and the whole proceeding seemed to be fair, and the result was in accordance with the general wish of those interested.

The authority under which that election was held, is contained in Ordinance No. 10, passed by the Constitutional Convention of 1866.

The ordinance is as follows:

"Sec. —.    Any county, city or town of this State, may become a stockholder in, or loan its credit to, any company, association or corporation; *provided*, two-thirds of the qualified electors of such county, city or town, voting at an election held therein, under rules and regulations prescribed by law, assent to the same."

There were not in existence, in our statutes, any rules and regulations prescribed by law for the specific kind of election contemplated in this ordinance; and it must be presumed that the legislative intent was that the rules and regulations prescribed by law for general elections should be followed.   That the election, ordered as this was, and conducted as this was, was a compliance with the ordinance, we entertain no doubt; and we are not prepared to say that the election would not have been good if the election had been ordered by a town meeting, but conducted in all respects in accordance with the rules and regulations prescribed by law for general elections.   The point to be arrived at was the expressed wish, by a vote of the people, whether they desired to take the stock in question, and to aid in building the bridge.

REHEARING REFUSED.