RING *v.* THE COUNTY OF JOHNSON.

In an action against a county on interest coupons attached to county bonds, issued in payment of subscription to the capital stock of a rail-

way corporation, it is not necessary to set out in the petition the power of the county to make the contract.

Under section 108 of the Code, a promissory note issued by a county, need not be executed by a county judge in his official capacity, and acknowledged by him, nor have the county seal affixed.

Section 108 of the Code does not apply to parol or implied contracts entered into by a county; and the words "contracts to be formally executed," in that section, indicate a distinction among written contracts.

Where interest coupons attached to county bonds, were signed, "By order of the Judge of the County Court of the county of Johnson, State of Iowa. S. J. HESS, Clerk of the County of Johnson," and to which no county seal was attached: Held, That the seal of the county was not essential to the validity of the instrument, and that the instrument was so executed as to bind the county.

Where interest coupons issued by a county, recognize the fact, that they constitute part of, and belong to, certain bonds, and recite that they are given for the interest becoming due upon such bonds, it is to be presumed that the bonds were correctly executed by the county judge, and are under the county seal.

An action may be maintained against a county, upon interest coupons issued by it, without setting out in the petition the bonds to which the coupons were originally attached.

*Appeal from the Johnson District Court.*

TUESDAY, JUNE 22.

This action was brought to recover the amount of one hundred notes or coupons, each for the sum of thirty-five dollars, and which are in the following form:

INTEREST WARRANT No. 1, OF BOND No 1.

The county of Johnson, in the State of Iowa, will pay to the holder hereof, at &c., on the first day of June, 1856, thirty-five dollars, for interest due on that day, on bond No. 1, issued for subscription to the stock of the Lyons Iowa Central Railroad Company. By order of the Judge of the County Court of the county of Johnson, State of Iowa.                                      S. J. HESS,

$35.                         Clerk of the County of Johnson.

These coupons are alike, except in the time when payable, and the numbers. The declaration alleges, that "on the first of December, 1853, the county of Johnson made and delivered their promissory note in writing, whereby said county of Johnson undertook and promised, for value received, to pay," &c. The defendant demurred, upon the following grounds: 1. That the petition does not show that the defendant had the power or authority to make, or execute the said promises to pay; nor does it set forth any facts which show such power and authority; 2. That the defendant had no power or authority under the laws of the State, to make the same; 3. That the said promises are void upon their face, for the reason that the county had no such power; 4. That the petition does not show that said promises to pay, were under the seal of the county, or were executed by the defendant; 5. That the petition sets forth no sufficient cause of action against the defendant. The demurrer was overruled. The defendant rested upon it, and judgment was rendered for the plaintiff, from which the defendant appeals.

*Clarke & Henley*, and *Levi Robinson*, for the appellant.

*James Grant* and *Wm. E. Leffingwell*, for the appellee.

WOODWARD, J.*—Both the notes declared on, and the declaration, state upon their face, that they were given and issued upon the subscription of the county, to the stock of the Lyons Iowa Central Railroad Company. The first three causes of demurrer constitute, substantially, but one, which is, that the petition does not set forth, or show, any power in the county to enter into such contracts; and that, in fact, it had not such power—or, two propositions, at the most, will embrace them; one being, that the county had not the power; and the other, that, admitting the exist-

WRIGHT, C. J., dissenting.

ence of the power in law, yet it should be set forth and shown. They will be considered together in the brief space which they require.

The question whether counties have power, under the law of this State, to subscribe to the stock of railway companies, and thus to assist in the construction of this species of road, has been fully considered by this court in the case of *Clapp* v. *The County of Cedar*, 5 Iowa, 15. This question is not argued in the case at bar, and the counsel do not appear to look for a re-examination of it. Since the decision of the former cause, the court has seen no occasion for a change in its views, and the subject will not be again discussed in the present case.

As the power of the county to make such a contract, exists by virtue of the general law of the land, we do not perceive any reason why it should be set forth in the declaration, more than in any other supposable instance. Why is it thought requisite in the present instance? The fact that, in a case of this kind, there must first be a vote of the people to authorize it, does not constitute a reason for such a change in the manner of declaring. The law giving the power to make the contract, and to give the note, in a certain state of things, and the note having been given, the pleader may assume the needful circumstances, until the contrary is pleaded. Why would it not be equally necessary to set forth the power of a county to execute any other contract, by setting forth its considerations, since its power is limited to a small number of subjects, and goes no farther than the statute defines? Without further discussion, we may say that we perceive no reason why the plaintiff should be held to set forth the power of the county in the first instance.

The fourth cause of demurrer is, that the petition does not show that the notes were made under the seal of the county, nor that they were executed by it; and the fifth cause is, that the petition sets forth no sufficient cause of action. The objections here suggested are, that the instruments sued on, and annexed, are not under the seal of the

Ring v. The County of Johnson.

county, and do not purport to be signed by the authorized agent of the county—that is, the county judge.    The question here is, first, whether the note must be under the seal of the county; and whether it is obligatory on the county, when signed in the manner in which this is.

It has become the well established doctrine, that corporations of all kinds may be bound by contracts not under their seals.    Angell on Corporations, 237.    And they may be bound, not only by verbal and implied contracts, but by those which are in writing, and not having the seal; and by these, too, when made by their agents.    Angell, 234 to 237, &c.; Kent, 290 to 292, 336 to 339, eighth ed.; Story on Con., sec. 312, and note, fourth ed., 1856.

Then the only questions are, whether the Code, by section 108, deprives counties of this facility of action, or this power, and renders it necessary for them to make all their contracts—at least all written ones—under their seals; and whether those in the present case appear to be made by the agent of the county.    These questions demand a construction of the above section, as to whether it requires the county seal and the judge's signature, in all cases of written contracts, or whether its intent is limited to one class of instruments, leaving others open to the law, as we find it on these subjects in our day, and as indicated in the foregoing remarks.    We do not think the statute intended to forbid that relaxation of the ancient rule concerning the action of corporations, which has been brought about by experience and dictated by necessity—which has been found absolutely necessary in the increase of the number of corporations, and their multiplied and diversified application to the business of life.    We are unwilling to believe it intended to ignore all modern improvements and advancement in the application of the law to the transactions of men, and to carry us back to the ancient, inflexible and impracticable rules relating to corporations and their mode of action.    Therefore, applying these thoughts to the present state of things, if the county judge makes a contract for building a court house, or to put a fence around the pub-

lic grounds, it does not seem to be of necessity that the county seal should be affixed to it. And if he purchases material, as lumber, brick or stone, and gives the note of the county, it would not appear essential that the seal should be attached. In such cases the law, whether statute or common, does not require a seal; and why should this corporation be thus restricted, not only beyond individuals, but beyond other corporations. Looking at the above section, (108) however, as the law which must govern, the question to be decided is, is it intended to cover all contracts, or only those of a certain class. The above thoughts cannot determine the point, but they may assist us in arriving at the intention of the legislature.

It would seem that each and all of the requisitions of the section apply to whatever class, or classes, of contracts are intended to be embraced in it—that is, whatever contracts are meant, they must be in the name of the county, executed by the judge, acknowledged by him, and sealed with the county seal. For, upon what rule can it be said, that one of these requisites applies to one instrument, and not to another; or that one of them belongs to one case, and another of them to another. It is manifest, that the provision can apply to written contracts only. And if the words, "which are to be formally executed," cover *all* these, then are they all to be signed by the judge, acknowledged by him, and have the seal affixed. This construction would restrict and embarrass the action of the county, to a very great degree. It would throw it back to the old rule, which was universally found so inconvenient, that a struggle has been going on for the past century to liberate them from it. It would be shutting out this class of corporations, from the benefit of those improvements in the law relating to them, which judges and courts have been striving to effect, and which has been accomplished for all others. Considerations of this kind are entirely legitimate, in the attempt to find the design of the legislature, and they do not lead the mind to the impression, that

the intention was to restrict the counties to so narrow and rigid a rule.

But we must look to the language of the section.  And we are drawn at once to the words, "to be formally executed."  What was intended by these?  The first and prominent impression on the mind, upon reading the section is, that it aims to provide for some particular class of instruments.  If all written contracts were meant, it certainly would have been more simple and more clear, as well as more natural, to say "all written contracts" made by the county, shall be executed as follows.  If this is the sense intended, it is most unhappily expressed—there would seem to be a studied effort to avoid clearness.

The words "to be formally executed," could not have been used to distinguish written from unwritten contracts, but they manifestly indicate some distinction between those which are written.  It may be asked, what is there, beside deeds of conveyance, to which the words " other contracts to be formally executed," can apply, unless they include all which are to be signed by one or both of the parties.  We may answer, that they would naturally, and well, apply to all that class of leases which the law formerly said should be under seal, &c., and which our statute now says shall be acknowledged and recorded—to title bonds, and all instruments creating an interest in, or affecting real estate—perhaps, to contracts coming within the statute of frauds, and to sales of personal property, where the possession is not changed.  These instances, we say, may be intended by those words, because these the law *requires* to be in writing, and generally requires an acknowledgment and recording also, for some purpose, and in which the common law requires a seal.  But it is not our design to undertake a definition of all the instances, which the words under examination are intended to embrace.  We only aim to show, that there may be a meaning for them, without extending them to all written instruments.  They cannot apply to parol and implied contracts, and therefore they must indicate some line of distinction among written ones, and the

above remarks indicate a possible and reasonable distinction. Upon the whole, we are of the opinion that the following propositions are correct: *First*, The section under review, (108) of course, does not apply to parol or implied contracts; *secondly*, The term "contracts to be formally executed," indicate a distinction among written contracts; and *thirdly*, The promissory note of the county, is not embraced in the meaning of these terms. Therefore, we conclude, that the seal of the county is not essential to the validity of the instruments now sued upon.

We come, then, to the question, whether these instruments are signed or executed in such a manner as to bind the county. It is urged that the county judge is the sole agent—the only known agent of a county—and that none other can act as such, or can bind the county. In the case of *Clapp* v. *The County of Cedar*, *ut supra*, we have expressed the idea that, although the statute constitutes the county judge the "general agent" of the county, yet the law of principal and agent, and the common ideas of an agency, do not apply to him, nor to the relation existing between him and the county; because he is an officer created by the law, his powers and duties are defined by the law, and not by the county, and he is answerable to the law; and although the people of a county elect the person who shall act, yet they do not create the office, nor define his powers and duties, and they cannot refuse to elect, nor can they dismiss him. So that he is the living representative—the embodiment of the county. His acts are the acts of the corporation. When an act is of a nature to be performed by another, he can appoint an agent. Many of his powers he could not delegate to another, such as his judicial authority, and such would be his official judgment and discretion. But no objection is perceived to another's performing a ministerial act, under his order and direction. Of this character, is the act of the clerk in signing the notes, by order of the county judge. The clerk could not determine whether the stock should be taken, nor whether the bond and coupons should be given; but the objections

to his signing these instruments, upon the order of the judge, is not very apparent. It is equivalent to the order of the county, and the clerk acts as under the county authority, and it must be considered sufficient.

There is ground for a doubt, whether what has been said, could be maintained in relation to the coupons alone, and if they stood separate and independent from the bonds of the county. *Clark* v. *City of Janesville*, 4 Am. L. Reg., 591. But they themselves recognize the fact, that they constitute part of, and belong to, certain bonds ; that is, the existence of such obligations is recognized in them, and they recite that they are given for the interest becoming due upon them. As those obligations are not set out in the action, but are referred to, and assumed in the coupons, it is presumed that they are correctly executed by the county judge, and are under the county seal. There is nothing further made to appear in relation to them, than the recital in the notes ; and as some presumption must be entertained in regard to them, it would naturally and necessarily be in their favor, rather than against them. Whatever doubt, therefore, might exist in regard to the coupons, in case they stood alone, it is obviated by the reference in them to the obligations of the county on which they rest. In view of the whole matter, we conclude that the action may be sustained upon these instruments. If the defendant questions the fact of the authority of the clerk from the judge, to execute them, this should be done by a denial, and it does not arise under a demurrer.

No importance is attached to the circumstance, that the clerk recites that he signs, by order of the " Judge of the County Court," instead of the " Judge of the County of Johnson," or "the County Judge ;" nor that he styles himself " Clerk of the County of Johnson." Although the statute does not formally give the clerk such a name of office, but says that the clerk of the district court shall be *ex officio* clerk of the county court, yet it sometimes styles him "the County Clerk," as in sections 255, 274, 313. And as to the style given the judge, as his offices require so

nice a discrimination, whether he is acting in the one capacity or in the other, and as he is legally styled "County Judge," or "Judge of the County of Johnson," we should hardly consider it a fatal error, that he is entitled "Judge of the County Court."

We conclude that the instruments sued on are sufficient to hold the county, so far as regards any matter suggested on the demurrer, and the judgment is affirmed.

Judgment affirmed.

WRIGHT, C. J., *dissenting.*—As I hold that the county had no power to issue these bonds, for reasons stated in *Clapp* v. *The County of Cedar*, I dissent from the foregoing opinion. I think the demurrer should have been sustained.