## MONTGOMERY *v.* TOWNSHIP OF ST. MARY'S.

### CHADBOURNE *v.* SAME.

*(Circuit Court, D. Kansas. August 30, 1890.)*

TOWNS—BONDS—EXECUTION.

    Gen. St. Kan. § 414, requires bonds issued by a township to be "signed by the township trustee, and attested by the town clerk." *Held*, that township bonds were not invalidated by the fact that the name of the township trustee was signed for him by a third person, in his presence, and at his request, the bonds being subsequently duly delivered and certified, and the interest paid thereon by the township for 10 years.

At Law.

*S. L. Seabrook*, for plaintiffs.

*Johnson, Martin & Keeler*, for defendant.

FOSTER, J. These are suits upon municipal bonds issued by the defendant township. The facts of the case are briefly as follows: On the first day of August, 1871, the defendant township issued its bonds in the sum of $40,000, due in 20 years, at 10 per cent. interest, payable to the King Wrought-Iron Bridge Manufactory and Iron Works, for the purpose of building a bridge over the Kansas river in said township. Coupons were attached for the semi-annual interest, and these actions are brought on the coupons. The defendant denies that the bonds or coupons were ever made or executed by the defendant township or its officers. The bonds and coupons bear the name of J. D. Downing, township trustee, and Alva Higbee, township clerk. The facts in reference to the execution and issue of the bonds are as follows: The bridge was built and accepted by the township, and the bonds were prepared, with the exception of the signature of the officers, and taken to the city of Topeka, in January, 1882, where Mr. T. B. Mills, president of the bridge company, and William H. Jenkins, and James D. Downing, who was trustee of said township, and Alva Higbee, who was clerk of said town-

ship, met together at an hotel in said city, and Mr. Higbee signed said bonds and coupons, as clerk, and, at the request of Mr. Downing, who was present, but who said that he was nervous, and a poor penman, Mr. William H. Jenkins signed the name of the said Downing to the said bonds and coupons, in the presence of the said Downing, and the other parties. After signing the bonds they were delivered by Downing and Higbee to Mills for the bridge company. In July, 1872, this issue of bonds was certified by the township trustee, clerk, and treasurer, as a valid and subsisting indebtedness against said township of St. Mary's; and again, in January, 1873, said bonds were certified by the township clerk as a valid and subsisting indebtedness against said township. The township paid the interest on said bonds for a period of 10 years.

This case turns on the single question, whether the name of the trustee signed as it was, followed by delivery of the bonds, and the subsequent acts of the township officers, makes the indebtedness a legal obligation of the defendant township. Section 414 of the General Statutes of Kansas, making provision for the issuing of municipal bonds, provides as follows· "And if issued by a township shall be signed by the township trustee, and attested by the township clerk." The doctrine is well settled that a public officer cannot delegate to another the exercise of his official duties. It is equally well settled that, in the transaction of private business, a person may orally authorize another to sign his name in his presence, and such signature is valid. Can a public officer delegate to another, not the exercise of official discretion, but simply the performance of a ministerial act, such as signing his name in his presence, and under his order? In *Chapman* v. *Limerick*, 56 Me. 390, the court held that a constable's return to a warrant calling a township meeting must bear the sign-manual of the constable who executed it. This conclusion was largely induced by a statute of the state which provided: "When the signature of a person is required, he must write it, or make his mark." This is the principal case to which my attention has been called on the part of the defendant. On the other side we find several cases more or less pertinent. *Ring* v. *County of Johnson*, 6 Iowa, 272; *Railroad Co.* v. *Marion County*, 36 Mo. 303; *Just* v. *Wise Tp.*, 42 Mich. 575, 4 N. W. Rep. 298. In this case the township clerk signed the highway commissioners' names to an order on the treasurer in the presence of, and by order of, the commissioners, who then indorsed on the order that the labor and material for which the order was given had been performed and furnished, and delivered the order to the proper person. The court held, if there was any question as to the validity of the signatures, that the indorsement and delivery of the order by the commissioners was an adoption and approval of the signature, and the order was valid. The court uses this language:

"If either had been unable to sign his name, and had directed another to sign for him, and this had been done in his presence, the act would have been good, whether he made his mark thereto or not."

See, also, *Town of Weyauwega* v. *Ayling*, 99 U. S. 118; *Com.* v. *Harnden*, 19 Pick. 482; *People* v. *Bank*, 75 N. Y. 555.

From the cases above cited, I am led to the conclusion that the signature of James D. Downing, trustee, to the bonds and coupons must be held valid; but while doing so I cannot forbear to condemn this practice as reprehensible. No cautious business man would either issue or receive bonds executed in this manner. It doubtless is susceptible of proof that this is not the writing of J. D. Downing. Several of the parties to the transaction are already dead. It is shameful that the holders of municipal bonds should risk investments on the life or memory of a living witness, with no other evidence of the transaction. Besides, it opens the door to fraud and perjury, and casts a cloud of suspicion on the transaction. Judgment must go for the plaintiffs for the amount claimed.