## KENNEDY v. BATES.

(Circuit Court of Appeals, Eighth Circuit. November 1, 1905.)

No. 2,155.

1. EVIDENCE—CONVEYANCES—DECLARATIONS BY GRANTOR.

In a suit in equity to have a deed, absolute on its face, from a mother, since deceased, to a child, declared to be held in trust for the benefit of certain others of her children, testimony as to statements made by the grantor both prior and subsequent to the execution of the deed respecting why and for what purpose the same was made, when not a part of the res gestæ, and not introduced for the purpose of showing either mental incapacity or duress, *held* to be inadmissible.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 841, 846, 847.]

2. FRAUDS. STATUTE OF—MEMORANDUM—SUFFICIENCY.
Evidence tending to show that the defendant, in a mere matter of book-keeping, in a corporation of which he was manager and the complainant a stockholder, had entered a charge against the corporation for counsel fees paid by the defendant in respect to the property sought to be charged with such trust, and the fact that at one time the defendant made a written lease of the property, executed by him, with the word "Agent" affixed, without more, *held* not to be a sufficient memorandum in writing to take the case out of the operation of the statute of frauds.

3. DEED—SETTING ASIDE—FRAUD.
Attacks made by heirs upon deeds from a parent to a favored child, not to be encouraged or sustained, except upon the clearest and fullest proof.
[For cases in point, see vol. 16, Cent. Dig. Deeds, § 641.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

Edwin H. Park, for appellant.

J. C. Helm (C. H. Haines, on the brief), for appellee.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

PHILIPS, District Judge. In October, 1898, Cordelia E. Bates, of Denver, Colo., being seised in fee simple of certain real estate situated in said city, by two separate deeds of quitclaim, conveyed said lands to her son, William E. Bates, appellee herein, vesting the absolute title in him, for the expressed consideration of one dollar and other valuable considerations in hand to her paid. At the time of these conveyances her husband, Joseph E. Bates, was living. She died on the 9th day of September, 1900, and her husband died on the 22d day of the same month. They left surviving them four children—the appellant, Mary E. Kennedy, the appellee, William E. Bates, Benjamin F. Bates, and Joseph C. Bates—all of whom had attained their majority. A few years prior to his death the said Joseph E. Bates conveyed all of his real estate to the three children, the said William, Benjamin, and Mary, making no provision for the son Joseph, who seems to have been a wayward and profligate man, and therefore was under the displeasure of his father. The last few years of his life the father was a comparative invalid, and his business affairs, as well as his person, were looked after and cared for to a considerable extent by the appellee, who also attended principally to the business affairs of the mother. In taking care of said real estate of the mother, and making provision for her, she having been ill for a year or so prior to said conveyances, debts were incurred which were secured by mortgages on said lands to the extent of about $10,000, leaving the value of the equity approximately at $25,000 or $30,000. On the notes representing said incumbrances the appellee was indorser.

In September, 1902, the said Mary E. Kennedy instituted this suit in equity against said William E. Bates, alleging, in substance, that it was well known and understood by the defendant that by said deeds the said mother was parting with the legal title to the property for no real value, and that she was influenced to make said conveyances

by her willingness and desire to enable the defendant to procure for her ready money by mortgaging said property "and by way of advances upon the credit of said real estate," that "except to parties who would hold the lands in said deeds described in trust for her she would not have been induced to part with the same at all, that said conveyances were made only for the purposes aforesaid, and that said defendant should at all times hold the property in said deeds described in trust for said Cordelia E. Bates and her heirs." The bill alleges that the complainant had at various times contributed to the expenses of maintaining said property, which she believed was held in trust in part for her benefit; that the defendant, at the time of making the conveyances, for the purpose of obtaining the legal title to said lands, agreed with and promised said Cordelia E. Bates to hold said lands only for the purpose above set forth and in trust for the benefit of said Cordelia E. Bates and her heirs at law; that the defendant, William E. Bates, intends to cheat and defraud the complainant out of her interest in said lands, and has refused to execute any declaration of trust thereon; that he induced said Cordelia E. Bates to make the deed with the intent to defraud the complainant out of her interest in said lands; that he was at the time of making the deeds the confidential agent of the mother, and was intrusted with the management of her affairs and estate, and handled her moneys and income; that she reposed great confidence in him, and he wielded a large influence over her action. The prayer of the bill is that the defendant be decreed to execute and record a declaration of trust, setting forth the true estate and title which he holds to the lands, and that he render an account for rents and income of said premises. The answer makes denial of all the material allegations of the bill in respect of the charges forming a predicate for subjecting the title in the hands of appellee to any trust in favor of appellant, and alleging other matters not material to the questions of law and fact to be decided. On the pleadings and proofs the Circuit Court dismissed the bill.

The evidence on behalf of appellant, aside from some extraneous, incidental matters referred to hereafter, consists chiefly of her own deposition, in which she makes many statements which are mere conclusions drawn in her own mind, without any specification of facts on which they were based, so as to enable the court to determine whether or not her deductions were warranted. She did not depose to having heard any conversation between her mother and the appellee, either before or after the execution of the deeds of conveyance. Much of her testimony was directed to an attempt to show that appellee was not a competent business man; that he had proven to be a failure in money-making, and had not successfully managed the affairs of his father or his mother; but by mismanagement had constantly increased rather than decreased the indebtedness upon the property. She testified respecting statements made to her by her mother after the execution of the deeds in question, tending to show that the mother made them the better to enable the appellee to raise money on the property, and that she intended that William should hold the property for the benefit of all the children. On the other hand, the testimony on behalf

of the appellee tended to show that at the time of the execution of the deeds the mother was in full possession of her mental faculties and was physically well; that she was a sensible woman, competent to manage her own affairs; that appellee was her favorite child, who had been devoted to his mother, had remained with or about her, caring for her; that the mother had frequently expressed herself as displeased with the conduct and deportment of the appellant; and the conveyances to the son were in conformity with her frequently expressed intention. In refutation of the contention that the title to the land was placed in appellee for the purpose of enabling him the better to or more easily raise money on its security in order to meet her necessities, and the like, it was shown that at the time the mother had other funds for her immediate support, arising from the sale of some other property owned by her, and that the additional mortgages were not placed on the property by appellee until a year and a half after the conveyances to him, when it was mortgaged to secure two notes of different dates of $5,000 each, which money the appellee claims in his testimony was to meet the antecedent incumbrances on the property for which he stood as indorser.

All the evidence touching the declarations of the mother before and after the execution of the conveyances in question was incompetent. Aside from the well-known rule of law that a grantor cannot by any act or declaration subsequent to the making of the deed impress or affect the title conveyed by him, such statements as to this appellee were mere hearsay. In the leading case of Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663, it was held that declarations, whether oral or written, made by a testator, either before or after the making of the testament, are not admissible as evidence in favor of or against the validity of the will, unless made so near to the act in point of time as to become a part of the res gestæ; and this is limited to the issue as to the testamentary capacity of the testator, or under an issue of undue influence to show the state of mind under which the testator at the time acted, as to its freedom. It was held that the reasons for excluding such statements after the execution of the instrument are just as potent as when made prior thereto. Such declarations, when admitted, are solely to show the state of the affections of the deceased, or rather his mental capacity or state of mind, when that is the subject of inquiry. But when such is not the matter in issue, and the declarations are not a part of the res gestæ, they stand as unsworn statements, and are mere hearsay. "Whether the utterances are true or false cannot be determined from their mere statement, and they are without value as proof of their truth, whether made by the sane or insane, because they are in either case unsworn declarations." The same rule, by a parity of reasoning, should apply as well to conveyances by deed as by will. No issue is presented in this bill as to the mental capacity of Mrs. Bates at the time of making the deeds in question to make an intelligent disposition of her property, nor is there any sufficient allegation of undue influence exerted over her so as to destroy or subvert her freedom of action;

and, if there had been, there is no evidence in this record sufficient to support it.

Eliminating from the case presented by the complainant all this testimony respecting statements claimed to have been made by the mother both before and after the execution of the deeds, the only fragment of evidence left, relied upon by her counsel as a basis of support for a constructive trust, is the contention that after the execution of the deeds the appellee dealt with the property as if he held it as a part of the common estate of the heirs at law of Mrs. Bates. Recognizing, as her learned counsel must, the necessity of going further to meet the positive mandate of the statute of frauds, which requires that there shall be some written memorandum evidencing the creation of the charge upon the title vested in the appellee to impress it with a resulting trust in favor of the complainant, he seeks to find this evidence in the account book kept by appellee as the president of the Bates Investment Company. The evidence shows that at the time of the conveyance of the real estate by the father to the three children, it was incumbered by mortgages, and for its better management and preservation the three children organized a corporation known as the Bates Investment Company, and vested the title to the real estate conveyed by the father in said corporation, the stock of which was equally divided between the three incorporators, who composed its board of directors; the appellee acting as its president and principal manager, and Benjamin Bates acting as its secretary. It further appears that some time after the conveyances in question by the mother to appellee a sale of the real estate thereby conveyed was attempted to be made by him for what was called an "Auditorium Building"; that for professional services of Judge Helm, as counsel for appellee in and about that negotiation, there were entries of charges as debts upon the book of the Bates Investment Company as follows:

November, 1900, Joseph C. Helm...................................$100 00
December, 1900, Joseph C. Helm................................... 125 00
February, 1901, Joseph C. Helm................................... 50 00
June,      1901, Joseph C. Helm................................... 100 00

The appellee explains this in his testimony by stating that he did not keep separate books for private business and that of the corporation, but entered everything in the corporation book in chronological order, having the entries so marked that he could distinguish private and corporate accounts. This sporadic incident, of entering a charge in the corporation book, without more, under the most eager disposition of a chancellor to seize upon any written memorandum to find the existence of a constructive trust, to thwart the effort of a dishonest man taking shelter under the statute of frauds contrary to good conscience, finds no support in any recognized adjudication as sufficient to take this case out of the operation of the statute. It is claimed by the appellant that her stock in said investment company was taxed to raise money for the benefit of the lands conveyed by the mother to the appellee. The evidence to support this is wholly insufficient.

The other incident relied upon by appellant is a lease made by appellee in November, 1899, of the property in question to the Gallup Floral & Seed Company, executed by him as "W. E. Bates, Agent." There was no explanation as to why the lessor was so designated, which may be accounted for by the fact that, over the objection of appellee's counsel, this instrument was not put in evidence in chief before the master, as it should have been, but was presented to and filed by the master as an exhibit at the close of her evidence in rebuttal, and after the appellee had testified on his behalf. But, waiving any technical objection to the time and manner of the introduction of this paper, there is nothing on its face to indicate that the appellant or other heir of Mrs. Bates was principal under or for whom the appellee thus contracted. For aught the court knows, there was some reason sufficient in his mind for so executing the lease entirely independent of a thought or purpose that he was recognizing any trust relation to said property for the benefit of the complainant. Certainly, without more, it does not come up to the requirement of a written memorandum within the meaning of the statute of frauds.

The allegations of the bill itself are hardly sufficient to disclose a trust ex maleficio or ex delicto; that by fraud, misrepresentation, concealment, undue influence, or taking advantage of one's weakness or necessities, the grantee had obtained the legal title to the property, which renders it unconscionable to retain and enjoy the beneficial interest, so as to invite the interposition of equity to impress the title with a constructive trust in favor of the intended beneficiary. And, even had the bill so charged, there is an utter failure of evidence to support it. It may be that Mrs. Bates entertained the expectation that this son, to whom she deeded her property, would provide and care for her during the remnant of her life. If so, the evidence tends to show that he met this expectation. The jus disponendi inheres in the ownership of property. Mrs. Bates had the right to give her real estate to any one of her children—to select the object of her benefaction. So far from the law imputing any suspicion or attaching any burden to the title conveyed in favor of the other children, a conveyance from a parent to a child is founded upon a meritorious consideration, and creates a presumption of a preferment in the nature of a settlement on the child. Moore v. Pierson, 6 Iowa, 270, 71 Am. Dec. 409; Hanson v. Buckner's Devisees, 34 Ky. 251, 29 Am. Dec. 401; Frazer v. Western, 1 Barb. Ch. 222; Hill on Trusts, 170; 1 Perry on Trusts, § 164. This complainant is in no position to controvert this wholesome rule of law. She herself was the beneficiary of a like deed from her father, which conveyed the property that went into the Bates Investment Company, whereby her father selected her, William, and Benjamin Bates as the special objects of his benefaction, to the exclusion of his son Joseph Bates, whom he regarded as unworthy of bestowment.

The constant efforts of disinherited children to break in upon the exercise of the jus disponendi of the parent of his own property, to impress it with a constructive trust, or to vacate his deed on the ground of possible undue influence, and the like, invite the application

of the pronouncement of Mr. Justice Brewer in Beyer v. Le Fevre, 186 U. S. 125, 126, 22 Sup. Ct. 765, 46 L. Ed. 1080, uttered in respect of testamentary dispositions of property:

"One who is familiar with the volume of litigation which is now flooding the courts cannot fail to be attracted by the fact that actions to set aside wills are of frequent occurrence. In such actions the testator cannot be heard, and very trifling matters are often pressed upon the attention of the court or jury as evidence of want of mental capacity or of the existence of undue influence. Whatever rule may obtain elsewhere we wish it distinctly understood to be the rule of the federal courts that the will of a person found to be possessed of a sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence. The expressed intentions of the testator should not be thwarted without clear reason therefor."

The decree of the Circuit Court dismissing the bill for want of equity is affirmed.